[No. 41906.    En Banc.    May 4, 1972.]

DRAVO CORPORATION *et al., Appellants,* v. THE CITY OF
TACOMA, *Respondent and Cross-appellant.*

*DeGarmo, Leedy, Oles & Morrison* and *Richard M. Stanislaw,* for appellants.

*Robert R. Hamilton, Francis H. Chapin, Jr.,* and *John R. Kramer,* for respondent and cross-appellant.

STAFFORD, J.—This is an appeal from a judgment of the superior court declaring a portion of Tacoma's business and occupation tax unconstitutional. The challenged provision imposed a tax on the gross receipts of contracts made with the city, whether performed within or without its boundaries.

In 1964, pursuant to the authority of RCW 35.92.050, Tacoma issued an invitation for bids to build the Mossyrock dam, powerhouse and appurtenances on property it had acquired for that purpose in Lewis County. Section 1.08 of the Instructions to Bidders gave notice that Tacoma's business and occupation tax (hereinafter called a B&O tax) would apply to the prospective contract.

Dravo-Johnson is a joint venture formed for the specific purpose of bidding on and constructing the Mossyrock project. It is composed of two corporations: the Dravo Corporation, a Pennsylvania corporation with its principal place of business in Pittsburgh, and the Al Johnson Construction Company, a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Both corporations were qualified to do business in the state of Washington. The Dravo Corporation maintained its principal Washington office in Bellevue. Neither at the time of contracting nor thereafter did the Dravo Corporation, the Al Johnson Construction Company, or their joint venture have an office or place of business in Tacoma. The office and principal place of business of the joint venture (hereinafter called Dravo) was located at the dam site.

Having been informed of the B&O tax by the Instructions to Bidders, Dravo included within its bid an amount to cover such expenditure based on the applicable tax rate. Dravo's representative personally delivered its bid to the city clerk *in Tacoma*.

Dravo's low bid was accepted by the city *in Tacoma*. The formal contract was drawn on a form provided by the city. It was signed by representatives of the two jointly participating corporations at their respective home offices and submitted to Tacoma by mail on January 21, 1965. The following day, the contract document was finalized *in Tacoma* upon being signed by representatives of the city.

Tacoma collected a B&O tax of $40,184.38 on the contract. It was paid quarterly throughout the 4-year construction period, being based on and paid from the gross quarterly amounts advanced by Tacoma to Dravo under the contract. In addition to the amount paid by Tacoma, under the basic contract, the city also contracted to have Dravo perform extra work on the Mossyrock project. On the subsequent contracts, Dravo paid the city $3,418.36 in B&O taxes. There is no evidence that Dravo paid B&O taxes other than those in issue.

In September 1967, Dravo filed a claim for refund of the

B&O tax paid from October 15, 1965 to July 15, 1967. In June 1969, it filed a claim for refund of a like tax paid from October 15, 1967 to March 27, 1969. The total refund claimed was $40,184.38. The record does not indicate that a claim for refund was made for the $3,418.36 paid in B&O taxes based upon the extra work contracts. The claims were denied.

This action was brought to have the questioned provision of Tacoma's B&O tax ordinance declared unconstitutional and to obtain a refund of the amounts paid thereunder. In the alternative, Dravo requested an apportionment of said taxes upon their activities in the city. The city's answer pleaded as a bar, the statute of limitations, unjust enrichment and estoppel. Both parties moved for summary judgment.

At the hearing for summary judgment, the trial court ruled that, as applied to this case, the section of the ordinance imposing a B&O tax on persons contracting with the city was unconstitutional, and that the statute of limitations did not bar Dravo from recovering a tax refund. It left for trial Tacoma's affirmative defenses of unjust enrichment and estoppel.

At trial the court decreed that Dravo was entitled to recover the taxes paid on the extra work contracts (*i.e.*, $3,418.36), but denied recovery as to the tax paid under the terms of the basic contract (*i.e.*, $40,184.38) on the ground of unjust enrichment. Both parties have appealed.

■ It is well settled that the cities of this state have authority to levy B&O taxes. *State ex rel. Pacific Tel. & Tel. Co. v. Department of Pub. Serv.,* 19 Wn.2d 200, 272, 142 P.2d 498 (1943); *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 652, 21 P.2d 721 (1933).

Pursuant to that authority, Tacoma enacted a B&O tax ordinance which reads in pertinent part as follows:

6.68.225 Transactions subject to tax. Except where such a tax is otherwise levied and collected by the city from such person, there is hereby *levied upon and* there shall be *collected* from every person, as set forth and

provided in Section 6.68.220 of this chapter, *a tax on the act or privilege of engaging in business activities and transactions with the city involving* the purchase of materials, supplies, equipment, *improvements, and other contractual services.* Such tax shall be *levied on the privilege of accepting and executing the contract,* and shall be *collected whether such business activities or transactions occur* or take place *within or without the city and whether or not such person has his office or place of business within or without the city.*

Any person engaging in such business activities and/or transactions with the city shall be taxed on the contractual transactions in the same manner and form and under the same rules and regulations and at the same rates of tax as if they were doing business within the City of Tacoma.

(Italics ours.) It is this section which the trial court held unconstitutional, as applied to Dravo.

■ Initially, we note that a taxing authority has no power to levy a tax upon activities which occur outside its territorial limits. *Connecticut Gen. Life Ins. Co. v. Johnson,* 303 U.S. 77, 80, 82 L. Ed. 673, 58 S. Ct. 436 (1938); *James v. Dravo Contracting Co.,* 302 U.S. 134, 82 L. Ed. 155, 58 S. Ct. 208, 114 A.L.R. 318 (1937). As we said in *Lone Star Cement Corp. v. Seattle,* 71 Wn.2d 564, 572, 429 P.2d 909 (1967):

The phrase, "the privilege of doing business," used in section 3 of Seattle's ordinance, is all-inclusive; but taxation of that privilege must be confined to a standard within the territorial limits of Seattle, for the city has no power either to authorize, license, or tax activities beyond its territorial limits.

In *Lone Star,* Seattle sought to impose a tax for the "privilege of engaging in business activities" upon persons doing business within the city as manufacturers or sellers at wholesale or retail. The measure of the tax was the value of the products manufactured or the gross proceeds of such sales. Where the activity taxed occurred partially within and partially outside of the city, provision was made for apportionment.

Lone Star manufactured cement in two plants, one in

Seattle, the other in Concrete, Washington. Over 88 per cent of the cement products manufactured and sold at the Concrete plant were delivered to destinations outside of Seattle. The Seattle office took no part therein other than to receive information thereon at the end of each day. Seattle sought to tax the entire gross proceeds of sales from the Concrete plant.

Lone Star paid the tax on the gross proceeds from sales of all cement products (manufactured at its Concrete plant) which entered Seattle and were subsequently sold in or outside the city. We held that Seattle could not constitutionally tax the remaining 88 per cent of sales made from the city of Concrete.

In *Lone Star* the taxable events were sales made *outside* the city. We held the city could impose a B&O tax only if the taxable event occurred *within* its territorial limits.

In the case at bar, we must first determine the taxable events upon which Tacoma levied its B&O tax. In this regard section 6.68.225 provides:

> Such tax shall be levied on the privilege of accepting and executing the contract . . .

Thus, "accepting and executing the contract" is the taxable event.

■ Next, to decide where the taxable event occurred, we must determine the meaning of the phrase "accepting and executing the contract". A basic rule for construing revenue measures provides that if there is any doubt as to the meaning of a taxing statute or ordinance, it must be construed most strongly against the taxing power in favor of the citizen. *Foremost Dairies, Inc. v. State Tax Comm'n,* 75 Wn.2d 758, 763, 453 P.2d 870 (1969); *Buffelen Lumber & Mfg. Co. v. State,* 32 Wn.2d 40, 43, 200 P.2d 509 (1948). However, there is a corollary which provides that the foregoing rule is inapplicable unless it can be automatically assumed, or proved, that the statute in question is ambiguous or its meaning is doubtful. *Guinness v. State,* 40 Wn.2d 677, 685, 246 P.2d 433 (1952).

■ Interpreted in light of the whole ordinance, the

phrase "accepting and executing the contract" is not ambiguous. It refers to the taxpayer's activity of *entering into* a contract with Tacoma under which there will be a "purchase of materials, supplies, equipment, improvements, and other contractual services." It does not refer to the taxpayer's activity of *performing* the contract. Here, the contract *entered into* was for the purchase, by Tacoma, of an improvement (*i.e.*, a dam) to be built by Dravo.

As provided in ordinance section 6.68.225, the capacity in which Dravo was taxed and its rate of taxation were determined by section 6.68.220. Under section 6.68.220(d) it was taxed as one engaged in the business of making sales at retail. A sale at retail, as defined in section 6.68.055, includes

> the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: . . . (b) the *constructing,* repairing . . . or *improving* of new or existing buildings or *other structures* under, *upon,* or above *real property of* or for *consumers,* including the installing or attaching of any article of tangible personal property . . . whether or not such personal property becomes a part of the realty . . . and shall also include the sale of services or charges made for the clearing of land and the moving of earth to the extent necessary for such constructing or improving . . .

(Italics ours.) The taxable event was the activity of Dravo in *entering into* a contract to construct the Mossyrock dam for Tacoma.

■ In determining where this taxable event occurred we must look to the indicia of contract making. The invitation for bids was issued *in Tacoma*. Dravo submitted its bid by having a personal representative deliver it to the city clerk *in Tacoma*. Although the formal memorandum of contract was signed by representatives of Dravo outside of Tacoma, it was prepared on a form provided by the city and signed by the city's representatives *in Tacoma*. The totality of the foregoing indicia leads to the conclusion that the incidents had their locus in Tacoma, and were sufficient

to establish that, for the purpose of taxation, the basic contract's place of making was in Tacoma. *See American Oil Co. v. Neill,* 380 U.S. 451, 458, 14 L. Ed. 2d 1, 85 S. Ct. 1130 (1965).

Dravo argues, however, that Tacoma seeks to do indirectly what it cannot do directly. In effect, it contends the taxable event which Tacoma seeks to reach is not the activity of *entering into* a contract, but Dravo's *performance* thereof. Dravo directs our attention to the fact that the tax was collected quarterly throughout the course of the 4-year period it took to build the dam.

The mere schedule of tax collection, however, does not support the conclusion that the activity taxed was the *performance* of the contract. Section 6.68.220 provides that there shall be levied upon and collected, on a quarterly basis, a B&O tax based upon the gross proceeds from "sales at retail" which is defined in section 6.68.055(b) as including the construction or improving of structures on the real property of consumers. The taxable event is the *contract*. The gross proceeds from the construction or improving of structures on the city's property is merely the *measure of the tax*. Since Tacoma made quarterly progress payments to Dravo, the tax could only be measured by those payments as they were made. The quarterly collection was the fairest method of exacting the tax.

Having decided that the taxable event occurred within the territorial limits of the city, we must determine whether that taxable incident forms a sufficient contact, or nexus, with Tacoma to give, as a matter of due process, jurisdiction to impose the tax.[1]

A taxing authority is empowered to tax activity within its jurisdiction because it provides an environment of services and protection, which enable the taxpayer to

---

[1] For discussion of the due process nexus requirements *see* Barnes, *State Taxation of Interstate Commerce: Chaos and New Hope,* 16 W. Res. L. Rev. 859, 864-71 (1965); Barnes, *State Taxation of Interstate Commerce: Nexus and Apportionment,* 48 Marq. L. Rev. 218 (1964); *Federal Limitations on State Taxation of Interstate Business,* 76 Harv. L. Rev. 953, 960-62 (1962); Annot., 67 A.L.R.2d 1322, 1329-32 (1959).

engage in the activity that is the subject of the tax. To sustain the tax against a due process challenge, there must be a reasonable relationship between the event taxed and the benefit conferred. We referred to this rationale in *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 408, 25 P.2d 91 (1933); and the United States Supreme Court articulated it in *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 85 L. Ed. 267, 61 S. Ct. 246 (1940).

> A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.
>
> . . . The simple but controlling question is whether the state has given anything for which it can ask return.

Dravo contends that Tacoma has conferred no benefit upon which it may reasonably base the tax. It argues that construction of the dam took place in Lewis County, and that there is no evidence to indicate that Tacoma provided services or protection to Dravo at the dam site. On the other hand, Tacoma asserts that the benefit conferred was award of the $40,000,000 contract to Dravo.

Both contentions are incorrect. Dravo was not taxed on its activity in Lewis County. The tax was levied on the act of *entering into the contract* in the city of Tacoma. On the other hand, although the award of a $40,000,000 contract might be considered a benefit, the city received a reciprocal benefit, *i.e.*, a $40,000,000 dam. The benefit conferred, for which Dravo could be taxed, was the environment of an "orderly, civilized society", maintained by Tacoma within its borders, that enabled Dravo to there engage in a business transaction with the city (*i.e.*, entering into the contract with the city).

Due process requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344, 98 L. Ed. 744, 74 S. Ct. 535 (1954).

*Accord, American Oil Co. v. Neill,* 380 U.S. 451, 458, 14 L. Ed. 2d 1, 85 S. Ct. 1130 (1965); *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964); *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 465, 3 L. Ed. 2d 421, 79 S. Ct. 357, 67 A.L.R.2d 1292 (1959). The crux of this appeal is whether there is a definite link or minimum connection between the city and the transaction it seeks to tax, *i.e.,* the making of a contract with the city.

In reaching our determination we must bear in mind that when the constitutionality of a tax statute or ordinance is challenged, our concern must be with the practical operation of the tax. *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 85 L. Ed. 267, 61 S. Ct. 246, 130 A.L.R. 1229 (1940). Since it is the measure of a tax that determines its economic effect, the measure must reasonably relate to the activity taxed.

In the case at bar the measure of the tax is set forth in section 6.68.220 (d) of Tacoma's B&O tax ordinance. The measure of the tax is a percentage of the gross proceeds from the construction contract. The question is whether such measure is fairly related to the activity of making the contract to construct the dam. *General Motors Corp. v. Washington,* 377 U.S. 436, 441, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964).

The fact that the value which the gross receipts measure is, in large part, the result of activity *outside* the territorial limits of the taxing jurisdiction does not mean the gross receipts are not fairly related to the activity *within* the jurisdiction. There is no constitutional objection to resorting to extraterritorial elements in determining the *measure* of a tax. *General Motors Corp. v. State,* 60 Wn.2d 862, 874, 376 P.2d 843 (1962), *aff'd,* in *General Motors Corp. v. Washington, supra; Wisconsin v. J. C. Penney Co., supra* at 445, *rehearing denied,* 312 U.S. 712, 85 L. Ed. 1143, 61 S. Ct. 444 (1941); *Great Atl. & Pac. Tea Co. v. Grosjean,* 301 U.S. 412, 425, 81 L. Ed. 1193, 57 S. Ct. 772, 112 A.L.R. 293 (1937).

In *General Motors,* we sustained a state tax imposed

upon the privilege of engaging in business activities within the state, measured by General Motors' gross receipts from wholesale sales of motor vehicles, parts and accessories delivered in Washington. The fact that the gross receipts in large part represented extensive out-of-state manufacturing and operational activities did not mean that the gross receipts were not fairly related to the act of selling. As stated by the United States Supreme Court in the *J. C. Penney Co.* case at page 445:

> The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.

In *General Motors* the local taxable incidents, the wholesale sales, were of sufficient substance that the sales price substantially reflected the value of the activities carried on within the state.

■ Dravo's transaction of making the contract with Tacoma, in the city, was a substantial income producing activity fairly related to the gross proceeds that accrued therefrom. Where the activity taxed is "selling at retail", as defined by ordinance section 6.68.055(b), a city can tax the gross proceeds from sales made within the city even though the subject of the sale is without the city. *Los Angeles v. Belridge Oil Co.*, 42 Cal. 2d 823, 271 P.2d 5 (1954), *appeal dismissed,* 348 U.S. 907, 99 L. Ed. 711, 75 S. Ct. 292 (1955); *Keystone Metal Co. v. Pittsburgh,* 374 Pa. 323, 97 A.2d 797 (1953), *cert. denied,* 346 U.S. 887, 98 L. Ed. 391, 74 S. Ct. 139 (1953), *rehearing denied,* 346 U.S. 917, 98 L. Ed. 413, 74 S. Ct. 273 (1953). Thus, the fact that the dam was constructed in Lewis County is not determinative. Further, although Dravo maintained no office in Tacoma, that, in-and-of itself, is not controlling. *General Motors Corp. v. State,* 60 Wn.2d 862, 874, 376 P.2d 843 (1962).

As to the basic contract, the locus of the activity taxed (*i.e.*, the making of the contract) occurred within the city, and provided a sufficient nexus upon which the city could

base its B&O tax.[2] The B&O tax on the basic contract was constitutional. The record, however, is barren of evidence to indicate the locus of the place of making of the extra work contracts. Thus, as to the tax on the latter, we are unable to determine whether a constitutional nexus has been established.

Dravo's activity in contracting for and constructing the Mossyrock project was wholly intrastate. Although the parties composing the joint venture are foreign corporations, the joint venture was formed for purely local purposes. Its entire operation took place within the borders of this state. No violation of the federal commerce clause is alleged and none can be asserted. *State Tax Comm'n v. Howard P. Foley Co.,* 13 Ariz. App. 85, 474 P.2d 444 (1970). It is, therefore, unnecessary to consider whether section 6.68.225 of the Tacoma B&O tax ordinance violates the federal commerce clause.

Dravo has, however, pleaded alternatively for an apportionment of the tax on the basic contract should we find the ordinance constitutional. Section 6.68.250 of the Tacoma B&O tax ordinance provides for apportionment as follows:

> 6.68.250 Business within and without city—Apportionment. Any person rendering services and maintaining places of business both within and without this city shall, for the purpose of computing tax liability under this section, apportion to this city that portion of his gross income which is derived from services rendered within this city. Where such apportionment cannot be accurately made by separate accounting methods, the taxpayer shall apportion to this city that proportion of his total income which the cost of doing business within the city bears to the total cost of doing business both within and without the city.

The question is whether the foregoing section requires apportionment in this case.

The state B&O tax statute contains an identical provision. RCW 82.04.460. Although we have not expressly con-

---

[2]*See American Oil Co. v. Neill,* 380 U.S. 451, 458, 14 L. Ed. 2d 1, 85 S. Ct. 1130 (1965) and the discussion in the body of the instant opinion.

strued the application of that section, we did consider it in *Crown Zellerbach Corp. v. State*, 45 Wn.2d 749, 278 P.2d 305 (1954). In that case Crown Zellerbach was taxed on its activity of extracting and manufacturing within the state. The measure of the tax was the value of the manufactured products which in turn was measured by the gross proceeds from their sales both within and without the state. Crown Zellerbach made no claim for apportionment, asserting instead a claim for total exemption. It contended the statutory scheme of the B&O tax assured that the local incidence of manufacture was not all that was taxed. Thus, it argued that its activity of selling interstate was indirectly subjected to an unconstitutional law. In referring to RCW 82.04.460, the apportionment provision, we pointed out that, contrary to Crown Zellerbach's argument, the statutory scheme assured that only the local incidence of manufacturing was being taxed.

In a second case, *Crown Zellerbach Corp. v. State*, 53 Wn.2d 813, 328 P.2d 884 (1958), Crown Zellerbach contended that since its sales promotion activities, carried on outside the state, were reflected in the gross sales price of products sold within the state, the first Crown Zellerbach case required an apportionment of the tax on wholesale sales within this state. We responded at page 819:

> We do not agree that the cited case so holds because . . . (2) the apportionment referred to therein concerns activities which are substantially a part of the taxable incident, rather than those activities which enhance only the measure of the tax.

██ Thus, under the statutory provision, apportionment is not applicable if the taxable incident or activity occurs entirely within the taxing jurisdiction. *See also Fibreboard Paper Prods. Corp. v. State*, 66 Wn.2d 87, 93, 401 P.2d 623 (1965); *General Motors Corp. v. State*, 60 Wn.2d 862, 878, 376 P.2d 843 (1962); *United States Steel Corp. v. State*, 51 Wn.2d 224, 226, 316 P.2d 1099 (1957).

Section 6.68.250 of the ordinance should be interpreted similarly. Only when the activity that is the incidence of

the tax takes place both within and without the city does section 6.68.250 require an apportionment of the gross proceeds.

In the case before us the taxable activity was the making of the contract. It took place entirely within the city limits. Thus, section 6.68.250 does not apply.

We do not reach the question of whether due process may require an apportionment when two different taxing jurisdictions taxing separate activities, but both using gross proceeds as the measure of their taxes,[3] impose a multiple burden on a taxpayer. In such a case the burden would be on the taxpayer to establish the multiple tax burden. *See General Motors Corp. v. Washington,* 377 U.S. 436, 441, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964); *Norton Co. v. Department of Revenue,* 340 U.S. 534, 537, 95 L. Ed. 517, 71 S. Ct. 377 (1951). Dravo has made no such showing. The record indicates that the joint venture was subjected only to the Tacoma B&O tax.

The decision of the trial court is reversed insofar as it holds that section 6.68.225 is unconstitutional. However, it is affirmed insofar as it upholds Tacoma's entitlement to retain the $40,184.38. The case is remanded for a determination, in light of this opinion, as to whether there is a sufficient constitutional due process nexus for Tacoma to impose its B&O tax on Dravo's gross proceeds from the extra work contracts.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, and NEILL, JJ., and RYAN, J. Pro Tem., concur.

---

[3]For a discussion of the problem raised when more than one municipality imposes taxes on intrastate commerce, *see* Sato, *Municipal Occupation Taxes in California: The Authority to Levy Taxes and the Burden on Intrastate Commerce,* 53 Cal. L. Rev. 801 (1965). California requires apportionment. *See Los Angeles v. Shell Oil Co.,* 4 Cal. 3d 108, 480 P.2d 953, 93 Cal. Rptr. 1 (1971); *Los Angeles v. Belridge Oil Co.,* 48 Cal. 2d 320, 309 P.2d 417 (1957); *Los Angeles v. Belridge Oil Co.,* 42 Cal. 2d 823, 271 P.2d 5 (1954), *appeal dismissed,* 348 U.S. 907, 99 L. Ed. 711, 75 S. Ct. 292 (1955).