[No. 1022-2.    Division Two.    December 3, 1973.]

STANDARD PRESSED STEEL COMPANY, *Appellant,* v. THE
DEPARTMENT OF REVENUE, *Respondent.*

*Kenneth L. Cornell* (of *Keller, Rohrback, Waldo, Moren
& Hiscock*), for appellant.

*Slade Gorton, Attorney General,* and *William D. Dexter,
Assistant,* for respondent.

ARMSTRONG, J.—This is an appeal from a superior court judgment affirming the final decision of the Board of Tax Appeals upholding the imposition of this state's business and occupation tax upon plaintiff, Standard Pressed Steel Company. It was the contention of plaintiff that imposition of the tax was unconstitutional. We hold that levying of the tax was constitutionally permissible.

The hearings below before both the Board of Tax Appeals and the trial court were conducted on the basis of the deposition of H. Robert Martinson, an employee of plaintiff, various exhibits introduced in connection with the deposition, and the pleadings in the case. There was no "live testimony." For this reason, it is unnecessary for us to consider the five findings of fact assigned as error by the plaintiff, because we may approach review of the plaintiff's contentions as indicated by the Supreme Court in *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969), quoting with approval the following language from *Carlson v. Bellevue*, 73 Wn.2d 41, 48, 435 P.2d 957 (1968):

> The appeal, therefore, from the trial court's judgment brings before us, in the same form and content, the identical documents and records presented to the trial court. Under these circumstances, we are not bound by disputed findings of the trial court to the same extent and in the same manner as where the trial court's findings rest upon the oral testimony of witnesses. . . . We are entitled to make our own examination of the records thus presented and determine the merits of the contentions going to the issue of arbitrary, capricious, and unreasonable legislative action.

(Citations omitted.) In other words, this court on appeal stands in the same position as the trial court in looking at the facts of the case and should review the record de novo. *Anderson v. Island County*, 81 Wn.2d 312, 316, 501 P.2d 594 (1972).

Both *Anderson* and *Smith* were zoning cases and the standard of judicial review was whether there had been arbitrary, capricious, and unreasonable legislative action.

In this case, the scope of judicial review is pursuant to the administrative procedures act and limited by the provisions of RCW 34.04.130(6).[1] Our review here is to determine from the facts whether the Board of Tax Appeals' decision sustaining imposition of the business and occupation tax was in violation of constitutional provisions.

The record discloses that plaintiff, Standard Pressed Steel Company, is a foreign corporation with production facilities located in Jenkintown, Pennsylvania and Santa Ana, California. A significant amount of plaintiff's business involves the manufacture and sale of fasteners (nuts and bolts, generally) to be used in the aerospace industry, and plaintiff's principal customer in this state during the tax years in question was the Boeing Company in Seattle.

The only employee of Standard Pressed Steel present within the state of Washington over the tax years in question was H. Robert Martinson, a "sales engineer." Martinson performed his activities for Standard Pressed Steel out of a portion of a room in his home equipped with a desk, telephone, and a file cabinet.

Martinson's primary function was to work with Boeing's engineers in the initial phases of aerospace design and construction, and through contact with Boeing engineers inform himself of possible prospective needs of the Boeing Company, and its various subcontractors, for aerospace fasteners. He would then initiate a product engineering request describing in detail the specifications required by

---

[1] RCW 34.04.130(6) provides:

"(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) arbitrary or capricious."

Boeing and send this information on to plaintiff's out-of-state offices. After receiving this information from Martinson, plaintiff would make a decision as to whether or not Standard Pressed Steel would attempt to "qualify" as a Boeing supplier of a particular fastener; that is, Boeing determined who could be a supplier of component parts by qualification tests done at their Seattle facilities. If plaintiff should decide to attempt to qualify as a supplier, the company would manufacture sample qualification pieces and forward these to Boeing for qualification tests. If the fasteners met the required specifications, Standard Pressed Steel would become an "approved source" and the Boeing Company would then enter into negotiations with plaintiff's out-of-state offices for purchase of the fasteners.

The record reflects that all such dealings and negotiations between Boeing and Standard Pressed Steel were carried on directly between Boeing and plaintiff's out-of-state offices. Martinson was bypassed completely, except to the extent that he periodically informed plaintiff of the various subcontractors, purchasing specialists, and control buyers of commodities for which Standard Pressed Steel was an approved source. Martinson had nothing to do with quoting prices, delivery dates, receiving, soliciting, accepting orders, handling shipments, or approving credit. No inventories were kept in this state, and all deliveries were made by plaintiff directly through a common carrier.

The above qualification process consumed approximately 80 to 90 percent of Martinson's time, with the remainder devoted to "troubleshooting." If Boeing experienced any problems in their use of the fasteners supplied by the plaintiff, Martinson's duties were to relay this information to plaintiff's engineers at the out-of-state offices, and there the engineers would work to resolve any difficulties with the product in their laboratories. The engineers would then forward their solution to Martinson, who would present the proposed solution to Boeing's engineers in Seattle. In addition, approximately 3 days every 6 weeks Martinson would set up meetings between Boeing engineers and visiting

groups of plaintiff's engineers to visit and discuss engineering problems.

Based on the above activity within the state of Washington, the state contends that Standard Pressed Steel Company is subject to the business and occupation tax measured by gross receipts from plaintiff's sales to the Boeing Company.

■ In assessing the constitutionality of imposing the business and occupation tax in this case, we may start with the undisputed proposition that a state may not tax the privilege of engaging in interstate commerce, but may impose a tax that is incident upon an activity that is peculiarly local and distinct from interstate commerce. *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 438, 84 S. Ct. 1564 (1964); *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944 (1938). In other words, a state *does* have the right to tax the privilege of doing *local* business, and if there is a taxable incident within the jurisdiction, the tax does not offend the commerce clause of the constitution as a tax on the privilege of doing interstate business. *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 527, 503 P.2d 117 (1972); *Rena-Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 519, 463 P.2d 622 (1970).

Here the record clearly discloses that Standard Pressed Steel Company employed Mr. Martinson as a resident agent within this state to conduct business activities with the Boeing Company, in part out of his Washington residence as an office, so that Standard Pressed Steel could: (1) become aware of which of its products the Boeing Company might be able to use; (2) secure the testing of sample products to qualify the products for sale to the Boeing Company; (3) obtain the engineering designs for such products; (4) resolve problems in the use of the products after receipt and use by the Boeing Company; (5) obtain and retain goodwill and working rapport with Boeing personnel; and (6) secure and update lists of Boeing purchasing specialists or control buyers, and the commodities for

which they are responsible, for the use of the personnel at the plaintiff's home office.

We are of the opinion that the foregoing substantial services constituted a sufficient peculiarly local and distinct taxable incident within the state of Washington such that imposition of the business and occupation tax was not on the privilege of engaging in interstate commerce, but rather on the privilege of doing local business.

Our inquiry does not end here, however, for even when there is a peculiarly local activity, the measure of the tax must be reasonably related to those local incidents. *General Motors Corp. v. Washington, supra.* A tax measured by gross receipts from sales by a foreign corporation to customers within the state must be closely related to the local activities of the corporation, for due process requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. v. Maryland,* 347 U.S. 340, 345, 98 L. Ed. 744, 74 S. Ct. 535 (1954).

■ It might be argued that since gross receipts from plaintiff's sales to the Boeing Company represent extensive manufacturing and operational activities in Pennsylvania and California, such gross receipts are not fairly related to the activities of Mr. Martinson. However, this contention was discussed in *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 599, 496 P.2d 504 (1972), as follows:

> The fact that the value which the gross receipts measure is, in large part, the result of activity *outside* the territorial limits of the taxing jurisdiction does not mean the gross receipts are not fairly related to the activity *within* the jurisdiction. There is no constitutional objection to resorting to extraterritorial elements in determining the *measure* of a tax. *General Motors Corp. v. State,* 60 Wn.2d 862, 874, 376 P.2d 843 (1962), *aff'd,* in *General Motors Corp. v. Washington, supra; Wisconsin v. J.C. Penney Co., supra* at 445, *rehearing denied,* 312 U.S. 712, 85 L. Ed. 1143, 61 S. Ct. 444 (1941); *Great Atl. & Pac. Tea Co. v. Grosjean,* 301 U.S. 412, 425, 81 L. Ed. 1193, 57 S. Ct. 772, 112 A.L.R. 293 (1937).

Plaintiff relies on *Norton Co. v. Department of Revenue,* 340 U.S. 534, 95 L. Ed. 517, 71 S. Ct. 377 (1951), in support of the contention that Standard Pressed Steel's sales to the Boeing Company were not sufficiently related to Mr. Martinson's activities to justify the tax. In that case, the Norton Company was a Massachusetts corporation that manufactured and sold abrasive machines. It sought a refund for taxes paid under the provisions of Illinois' occupation tax. The Norton Company had no salesmen within Illinois, but it did maintain an office and warehouse in Chicago where it kept a substantial inventory. The company also had a group of engineers available to supply engineering and technical advice.

The United States Supreme Court upheld the tax where the measure of the tax attributed to the Chicago branch income from all sales that utilized it either in receiving orders or distributing goods. The court noted that the taxpayer had not established that such services as were rendered by the Chicago office were not decisive factors in holding that market. On the other hand, the court held that proceeds from orders sent directly to Massachusetts by the customer and shipped directly to the customer from Massachusetts were not reasonably attributable to the local business, and therefore not subject to the Illinois tax. *Norton Co. v. Department of Revenue, supra.*

From this holding plaintiff argues that since the presence of consulting engineers in Illinois was not enough to justify the tax on the interstate items in *Norton,* the activities of Mr. Martinson should not sustain the tax on sales made directly between Boeing and plaintiff's out-of-state offices in this case.

However, plaintiff overlooks the fact that implicit in the *Norton* decision was the conclusion that the activities of the local Chicago office, including the activities of the engineers, were not decisive factors in holding or establishing the market reflected by the direct, interstate sales. For example, the *Norton* decision was construed by our state Supreme Court as follows: "We only interpret the *Norton*

Co. case as holding that such a tax may not be levied upon the proceeds from sales with which the local outlet had nothing to do." *B.F. Goodrich Co. v. State,* 38 Wn.2d 663, 675, 231 P.2d 325 (1951).

We are satisfied that the local activities of Mr. Martinson were instrumental in establishing and maintaining the Boeing Company as a market for the sales giving rise to the proceeds by which the state seeks to measure this tax. We therefore conclude that because the gross receipts from plaintiff's sales to the Boeing Company were reasonably related to the local incidents of the tax, imposition of the business and occupation tax here was not offensive to due process.

■ Plaintiff contends that the state's imposition of the business and occupation tax creates a multiple burden of taxation on plaintiff's interstate commerce. It is of course true that in judging the state's power to levy a tax measured by activities connected with interstate commerce, the following determinations represent guidelines presently employed:

> (1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.*
> (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.*

*McKinnis Travel Serv., Inc. v. State,* 78 Wn.2d 229, 232, 472 P.2d 392 (1970); *PUD No. 2 v. State,* 82 Wn.2d 232, 237, 510 P.2d 206 (1973).

■ In this case no argument has been advanced that discrimination against interstate commerce exists; nor could it be so argued, since this tax applies to all "businesses" in the state of Washington whether they engage in interstate commerce, intrastate commerce, or both. *McKinnis Travel Serv., Inc. v. State, supra.* As to the contention that the tax creates a multiple burden, we note that

the United States Supreme Court, as well as the Supreme Court of this state, has held that the burden is upon the taxpayer to affirmatively show that its activities are subject to taxation elsewhere. *General Motors Corp. v. Washington, supra; Washington-Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 367 P.2d 112 (1961). In this case we find no such affirmative showing other than the unsupported assertion in plaintiff's appellate brief that a multiple burden has been created.

For the foregoing reasons, we find no constitutional infirmities derived from either the due process or commerce clauses to preclude the state from levying a tax upon the local activities of Standard Pressed Steel Company. Further, it was constitutionally permissible to measure that tax by the value of gross receipts from sales to the Boeing Company's facilities in this state. We therefore sustain the imposition of the business and occupation tax in this case.

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 3, 1974.

Review denied by Supreme Court February 20, 1974.