[No. 46605.   En Banc.   July 3, 1980.]

THE CITY OF TACOMA, *Appellant,* v. HYSTER COMPANY, *Respondent.*

*Robert R. Hamilton, City Attorney,* and *F. H. Chapin, Jr., Robert Atkinson,* and *Thomas L. Dempsey, Assistants,* for appellant.

*Thompson, Krilich, LaPorte & Buckner, Ronald E. Thompson,* and *Kathleen D. Spong,* for respondent.

WRIGHT, J.—This is an appeal by the City of Tacoma (city) from a decision of a trial judge holding the city could not impose its business and occupation tax (B&O) upon the Hyster Company (Hyster). The matter was appealed to Division Two of the Court of Appeals, which certified the case to this court.

Tacoma, a city of the first class, has had an ordinance since 1951 imposing a B&O tax on the privilege of engaging in business within its boundaries. All persons so engaged must register, whether or not they actually owe a tax.

Hyster is primarily engaged in the sales and service of forklift trucks. Although the company has no Tacoma office it has four offices in the state, the principal office being in

Seattle. Hyster maintains listings in both the white and yellow pages of the Tacoma telephone directory, makes direct mail solicitations of customers and prospective customers in Tacoma, and advertises in various publications circulated in Tacoma.

Four employees—two salesmen and two servicemen—are assigned to territory which includes Tacoma. One of the salesmen spends about 60 percent of his time in Tacoma. The other salesman spends about 5 percent of his time in Tacoma. The two servicemen spend substantial time in Tacoma, one about 40 percent and the other about 20 percent.

The servicemen do repairs and servicing at the customer's place of business in Tacoma; or, if the work is too extensive for on–site service, the equipment is taken to Hyster's Seattle facilities. Sales to new customers in Tacoma are made by Hyster employees. The initial contact may result either from customer action or Hyster employees' calls. All sales are subject to approval by the Seattle office. Equipment sold is delivered by Hyster–owned vehicles or by common carrier.

Hyster has engaged in these activities in Tacoma since before 1951. However, it was not until September 1974, when the Port of Tacoma informed the city of a contract award to Hyster, that the city's tax and license department first became aware of these activities. On September 30, 1974, the city notified Hyster it must register, which Hyster did under protest.

An audit followed. After its completion in March 1975, a tax was assessed for the period from January 1, 1951, through December 31, 1974, on gross receipts of sales and service to Tacoma customers. Hyster refused to pay and the city sued to collect the tax. The city initially claimed $14,989.35; however, in oral argument it conceded the amount due might be considerably less.

Hyster pays B&O taxes to Seattle on 100 percent of its gross income, whether or not attributable to sales to Seattle

customers. Before the trial Hyster filed a third–party complaint against Seattle claiming judgment over for any amount for which judgment might be rendered against Hyster. Seattle answered, denying liability.

The parties stipulated to a bifurcated trial; the matter of the amount of taxes due was reserved until the taxable status of Hyster was determined. Hyster defended on three grounds: (1) there is not sufficient nexus upon which to base taxing jurisdiction; (2) there is impermissible double taxation because of the payment of tax to Seattle; and (3) the city is barred from collecting tax by a statute of limitation or equitable estoppel.

The trial court held Hyster is not liable to the city for the B&O tax. To avoid further litigation in event of a reversal the trial court rendered an "advisory opinion" holding there is not impermissible double taxation and that the action is not barred by the statute of limitation or by equitable estoppel.

The city appealed to Division Two of the Court of Appeals. The parties stipulated that Seattle had no interest in the appeal. Seattle was excused from taking any part in the appeal, but was retained as a party in the event of a reversal. It was further stipulated that all questions relating to the third–party complaint and answer were reserved, if necessary, for a further trial.

The first issue is whether Tacoma's B&O tax ordinance imposes a tax on Hyster. Tacoma City Code § 6.68.220 provides the tax shall be levied upon "the act or privilege of engaging in business activities within the city, whether his office or place of business be within and/or without the city . . ."

In light of Hyster's substantial sales–supporting activities, it is clear that Hyster is "engaging in business" for purposes of Tacoma's ordinance. The primary issue, and the one the trial court found dispositive, is whether Hyster's activities are sufficient, as a matter of due process, to give Tacoma jurisdiction to tax.

■ In *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 598, 496 P.2d 504 (1972), we said due process requires a "reasonable relationship between the event taxed and the benefit conferred." Because we are concerned with the practical operation of the tax, the measure of the tax must reasonably relate to the activity taxed. *Dravo Corp. v. Tacoma, supra* at 599. In *Dravo,* the question was whether Tacoma could tax gross receipts of contracts executed within the city, but performed outside its boundaries. We held that the contract making took place in Tacoma and provided a sufficient nexus upon which the city could base its B&O tax, measured by gross receipts. The only activities occurring within the city were the bid issuance, bid delivery, and signing of the contract by the city.

In *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972), the city sought to tax the entire sales price of tickets sold within the city even if the ticket provided for transportation to points outside the city or state. We said at page 527:

> [I]n the instant case the taxable incident is the sale of a ticket. If the local transaction forms a sufficient nexus or link, the transaction is taxable.
>
> Here the sale of the ticket does form a sufficient nexus and the whole transaction is taxable.

*General Motors Corp. v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962), *aff'd,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964), is similar to the instant case. General Motors had several divisions which operated in Washington; only the Chevrolet division had a branch office in the state. The United States Supreme Court held that the office was immaterial. What was important were the substantial promotion and service activities carried on by the employees in Washington. The transactions were taxable.

The recent case of *Standard Pressed Steel Co. v. Department of Revenue,* 10 Wn. App. 45, 516 P.2d 1043 (1973), *review denied,* 83 Wn.2d 1008 (1974), *aff'd,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975), upheld a Washington gross receipts tax. Standard Pressed Steel was a

Pennsylvania corporation which sold fasteners to Boeing. One employee, Mr. Martinson, operated in the state, working out of his home. His duties included receiving product complaints from Boeing and discussing possible future needs, both of which were relayed to the Pennsylvania home office. He did not take orders, make sales, or receive purchase funds. Pressed Steel made an argument similar to Hyster's, contending that the tax violated due process because the activities were so inconsequential. Justice Douglas, speaking for the court, said the argument

> verges on the frivolous. For appellant's employee, Martinson, with a full-time job within the State, made possible the realization and continuance of valuable contractual relations between appellant and Boeing.

419 U.S. at 562.

The instant case presents far more activity within the jurisdiction of the taxing authority than any of the above cases. Tacoma imposes the tax on gross receipts of sales and service to Tacoma customers, a measure which fairly related to the Tacoma activities. We, therefore, hold that Hyster is taxable upon sales within city boundaries. There is no merit to the claim the sales are actually made in Seattle.

Matters of apportionment and double taxation involve the City of Seattle. It would violate the parties' stipulation to consider those issues now. Moreover, it would disregard fair play and due process to consider those matters without Seattle's participation, including briefing and argument.

Hyster's claims of immunity from a part of the tax by reason of lapse of time are without merit. Section 6.68.290 requires the registration of all persons who engage in "business or activity" within the city. Hyster did not do so until required to register in 1974, shortly before this action was started. Section 6.68.370, dealing with past due taxes, provides no additional tax may be collected "more than 4 years after the close of the tax year, *except (1) against a taxpayer who has not registered as required by this chapter . . .*" (Italics ours.)

■ Hyster argues that the state 2–year statute of limitation, RCW 4.16.130, applies. Statutes of limitation apply to municipalities "in the same manner as to actions brought by private parties." RCW 4.16.160. This means the statute applies to a municipality when it acts like a private party, in a proprietary capacity. In collecting taxes, the city is acting in a sovereign capacity and is not subject to any statute of limitation.

■ The same reasoning applies to Hyster's claim of equitable estoppel. The duty to register was upon Hyster, which failed or refused to register in violation of the ordinance. Estoppel is not easily applied to prevent the collection of a tax. *Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n*, 77 Wn.2d 812, 818, 467 P.2d 312 (1970); *Wasem's, Inc. v. State*, 63 Wn.2d 67, 70, 385 P.2d 530 (1963).

We reverse the trial court's determination the activities in question are not taxable. The trial court is affirmed in that part of the "advisory opinion" which holds the collection of the tax is not barred by the statute of limitation or by equitable estoppel. That part of the "advisory opinion" dealing with Seattle and apportionment is not presently before the court. We do not express an opinion as to that matter. The cause is remanded to the Superior Court to proceed as indicated in this opinion.

ROSELLINI, STAFFORD, HICKS, and WILLIAMS, JJ., and HAMILTON and RYAN, JJ. Pro Tem., concur.

DOLLIVER, J. (dissenting)—Hyster has no sales office, plant or warehouse within Tacoma. Sporadic service calls and contract negotiations are carried on by two nonresident service people and two nonresident sales people whose territory is considerably more than Tacoma. The company maintains a listing for its Seattle office in the Tacoma telephone directory. The majority claims this is a "sufficient nexus upon which to base taxing jurisdiction". I disagree. The listed activities are not enough, as a matter of due process, to allow Tacoma to tax Hyster.

Although it cites a number of cases which have interpreted the question of a sufficient nexus, none is directly in point and all are distinguishable. In *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 496 P.2d 504 (1972), the City of Tacoma sought to apply its business and occupation tax to the $40,000,000 contract for the construction of the Mossyrock dam in Lewis County. We held for the City, pointing out that the delivery and acceptance of the bid as well as the signing of the contract for the dam took place in Tacoma. Here all sale contracts are subject to approval by Hyster's Seattle office. Similarly, in *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972), the "taxable incident [was] the sale of a ticket." When an actual contract was considered necessary to form the proper nexus, I do not believe due process allows holding mere contract negotiations enough. *See Norton Co. v. Department of Revenue,* 340 U.S. 534, 95 L. Ed. 517, 71 S. Ct. 377 (1951).

In *General Motors Corp. v. Washington,* 377 U.S. 436, 447, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964), the Supreme Court, in holding the state business and occupation tax applicable, relied on the "bundle of corporate activity" by which General Motors "enmeshed [itself] in local connections". An examination of that case reveals the "bundle of corporate activity" carried on by Hyster bears no relationship to the activities of General Motors.

In *Standard Pressed Steel Co. v. Department of Revenue,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975), although the single employee did not take orders, make sales or receive franchise funds, it was found that the activities of the employee,

> were necessary to [Standard Pressed Steel Company] in making it aware of which products Boeing might use, in obtaining the engineering design of those products, in securing the testing of sample products to qualify them for sale to Boeing, in resolving problems of their use after receipt by Boeing, in obtaining and retaining good will and rapport with Boeing personnel, and in keeping the

invoicing personnel of [Standard Pressed Steel Company] up to date on Boeing's lists of purchasing specialists or control buyers.

*Standard*, at 561. The activities of Hyster in Tacoma are hardly comparable.

The due process principle of a sufficient nexus is simple enough to state but difficult to apply. The cases cited by the majority do not on their facts cast a broad enough net to reach Hyster. There is no reasonable relationship between the events taxed—either singly or collectively— and the benefit conferred. The constitutional requirements of due process are too sturdy to be overcome by the gossamer nexus of the majority.

I dissent.

BRACHTENBACH, J., concurs with DOLLIVER, J.

Reconsideration denied October 16, 1980.