[No. 7447–8–II.   Division Two.   July 29, 1986.]

THE CITY OF TACOMA, *Appellant,* v. FIBERCHEM, INC., *Respondent.*

---

*Robert J. Backstein, City Attorney,* and *Michael D. Smith, Assistant,* for appellant.

*George M. Hartung, Jr.,* and *LeSourd & Patten,* for re–spondent.

REED, J.—The City of Tacoma seeks to reverse the trial court's refusal to impose the City's business and occupation tax on Fiberchem, Inc., a Washington corporation that does business with customers in Tacoma out of an office in Tuk-wila. Tacoma assigns no error to the trial court's findings of fact; they are therefore verities on appeal. *Beggs v. Pasco,* 93 Wn.2d 682, 685, 611 P.2d 1252 (1980). The only issues before us are whether the trial court erred in refusing to make several findings of fact proposed by Tacoma, and in concluding that Tacoma did not have jurisdiction to tax Fiberchem's activities within the city. We find no error, and affirm the trial court's dismissal of Tacoma's complaint.

Fiberchem is a distributor of raw plastics, with offices at

several places in the West. Its Washington office is in Tukwila. It has never had an office in Tacoma. It has never advertised in Tacoma. It assigns one field sales representative to southwest Washington, and he spends about 6 percent of his working time, 12 hours per month, contacting customers in Tacoma.

Fiberchem has had between 20 and 40 customers at any one time in Tacoma over a period of several years. Some larger customers, constituting about one–third of the customers in Tacoma, are contacted in person by sales personnel, but are handed over to telephone contacts in Tukwila, because the field sales representatives do not take orders from or make deliveries to Tacoma customers. Tacoma customers place orders by telephone at the Tukwila office, sometimes speaking with a field representative there, more often speaking with personnel who work at the Tukwila office exclusively. The "inside" sales personnel have approximately 10 times as many contacts with Tacoma customers as have the field representatives.

Between 1965, when Fiberchem started dealing with Tacoma customers, and 1978, all deliveries were made by common carrier, or no delivery was made because the customers came to Tukwila to pick up the purchase. Since 1978 Fiberchem has made some deliveries to Tacoma by two trucks that it uses for deliveries throughout western Washington, although the other two methods of delivery continue.

Fiberchem no longer has any records concerning customers that it had in Tacoma before 1969. Fiberchem and Tacoma stipulated that between 1969 and 1981 the proportion of sales income from Tacoma customers to the total sales income of the Tukwila office of the company was 4.38 percent.

Tacoma attempted to impose the city business and occupation tax on Fiberchem and to collect delinquent assessments. The trial court, holding that Fiberchem's activities in Tacoma were so minimal that it could not be said to be engaging in business there, ruled that such activities could

not form a nexus with Tacoma sufficient to give Tacoma jurisdiction to tax the sales that Fiberchem made to customers in the city, and that taxation without such jurisdiction would deny Fiberchem constitutional due process. The court rendered judgment for Fiberchem and dismissed Tacoma's complaint.

Tacoma has assigned error to the failure to make findings that it proposed to the court. *See* RAP 10.3(g); *see also Ruddach v. Don Johnston Ford, Inc.*, 97 Wn.2d 277, 281–82, 644 P.2d 671 (1982). The trial court is not obligated to make findings of fact on every contention of the parties. Rather, it is required to find only the material facts of the case, that is, findings sufficient to inform us, on material issues, what questions the trial court decided and the manner in which it did so. *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 707, 592 P.2d 631 (1979). The issue upon which the trial court based its decision was the significance or insignificance to Fiberchem's sales of the few activities its agents carried out in Tacoma. The only finding proposed by Tacoma that was relevant to this material issue was that "Fiberchem would suffer either the loss or a substantial diminution of its business" if the local visits by its sales representatives were discontinued. Because there was no real conflict on questions of fact in the record, we may consider all the facts in the record, *see Shultes v. Halpin*, 33 Wn.2d 294, 306, 205 P.2d 1201 (1949), to determine whether the testimony that would support this proposed finding should have affected the trial court's decision on the material issue. *See Daughtry v. Jet Aeration Co., supra.*

Although we have carefully considered the testimony that was before the trial court and that Tacoma urges upon us in support of this finding, we remain as unconvinced as was the trial judge that substantial evidence supports a finding that Fiberchem's sales to Tacoma customers would be substantially reduced if the company relied solely on its "inside" sales personnel in Tukwila. The sole testimony that might be read to that effect is a 1–word response in cross examination of the chairman of the board of directors

of Fiberchem. We therefore find that the trial court did not err in rejecting this finding.

Two of the remaining findings that Tacoma offered dealt with facts about Fiberchem's activities in Tacoma that were already adequately reflected in the findings actually made. Another concerned the tax base that would have been relevant to the issue of the measure of the tax to be imposed. However, the trial court decided the case on the antecedent question of the imposition of the tax itself; a finding concerning the tax base would not be material to that issue. Finally, Tacoma proposed a finding about the period of time during which Fiberchem engaged in some business activities in Tacoma, but during which it did not register with the City for payment of the business and occupation tax. Again, the trial court did not reach the issue of the period of time for which delinquent taxes could be collected. This proposed finding, too, was therefore immaterial.

We therefore reach the crux of this appeal, the determination that constitutional due process forbade imposition of the Tacoma business and occupation tax on Fiberchem. Tacoma imposes a tax

> for the act or privilege of engaging in business activities within the city, whether [the] office or place of business be within and/or without the city . . . by application of rates given against . . . gross proceeds of sales or gross income of business . . .

Tacoma City Code 6.68.220. Tacoma's right to impose this tax for the purpose of raising revenue is a judicial construction of the City's statutory right "[t]o grant licenses for any lawful purpose . . .", RCW 35.22.280(32) (formerly Rem. Rev. Stat. § 8966.33), as a city of the first class, RCW 35.22.570 (formerly Rem. Rev. Stat. § 8981). *Fleetwood v. Read,* 21 Wash. 547, 552–54, 58 P. 665 (1899) (licensing of businesses for revenue purposes permissible); *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 652–53, 21 P.2d 721 (1933) (business and occupation tax a permissible form of business licensing for revenue purposes), *aff'd,* 291 U.S. 300,

78 L. Ed. 810, 54 S. Ct. 383 (1934).

■ Our Supreme Court, in molding limits upon the exercise of a municipal corporation's power to impose a business and occupation tax on local business activities, has analogized from decisions of the United States Supreme Court in cases involving state taxation of interstate commerce. A 3–part test has evolved.

First, the event that is taxable under the relevant statute must be identified. *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 595, 496 P.2d 504 (1972).

Second, the taxable event must occur within the territorial limits of the municipality. *Dravo Corp. v. Tacoma, supra.* This is modeled on the federal rule that a state has no power to levy a tax upon activities that occur outside its territorial limits. *See Connecticut Gen. Life Ins. Co. v. Johnson,* 303 U.S. 77, 80–81, 82 L. Ed. 673, 58 S. Ct. 436 (1938).

Third, the imposition of a state tax on a sale outside that state requires a minimum connection between the state and the person, property, or transaction that it seeks to tax. *American Oil Co. v. Neill,* 380 U.S. 451, 458, 14 L. Ed. 2d 1, 85 S. Ct. 1130 (1965). This federal doctrine is the basis of Washington's requirement that a definite link or minimum connection exist between a municipality and the transaction that it seeks to tax. *Dravo Corp.,* 80 Wn.2d at 598–99.

■ The test of a sufficient nexus is itself twofold. First, is there a reasonable relationship between the taxing entity and the taxable event sufficient to justify taxation? *Dravo Corp.,* 80 Wn.2d at 597–99 (citing *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344–45, 98 L. Ed. 744, 74 S. Ct. 535 (1954)). Second, is the measure of taxation required by the taxing statute so fairly and closely related to the taxed activities of the taxpayer within the boundaries of the municipality as to complete the "definite link", the "minimum connection", between the taxing entity and the taxed event? *Dravo Corp.,* 80 Wn.2d at 599 (citing *General Motors Corp. v. Washington,* 377 U.S. 436, 448, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964)); *see also Tacoma v. Hyster*

*Co.,* 93 Wn.2d 815, 820, 613 P.2d 784 (1980).

Consistently with these three Washington rules of Fourteenth Amendment due process,[1] imposition of the Tacoma business and occupation tax has been approved when the taxable incident has been the signing of a contract by its final signatories within the city, even though the measure of the tax was gross proceeds on a construction project outside Tacoma. *Dravo Corp.,* 80 Wn.2d at 600. Likewise, imposition of the tax was permissible when the taxable incident was the sale of an intercity bus ticket within the city, even though the service provided in return extended beyond the city. *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 527, 503 P.2d 117 (1972). Tacoma business and occupation taxation has also been approved when machinery sales within Tacoma were supported by a Seattle office's frequent repair and maintenance services on site in Tacoma and its regular advertising to Tacoma customers. *Hyster Co.,* 93 Wn.2d at 820.

In the present case, the trial court correctly found that, if Fiberchem was not, within the terms of the taxing statute, "engaging in business" in Tacoma, the City could have no jurisdiction to tax. Under the *Dravo Corp.* tests, the determination that Fiberchem's activity did not amount to "engaging in business" must necessarily have been reached either because Tacoma did not have a reasonable relationship to the few activities performed by Fiberchem in Tacoma, or because the portion of Fiberchem's gross proceeds that represented sales to customers in Tacoma could not be found to have a fair and reasonable relationship to those few activities performed in Tacoma. On the undisputed evidence, although Tacoma can satisfy the first subtest for nexus, it fails to persuade us that the trial court

---

[1]We so characterize them because our Supreme Court has relied exclusively upon United States Supreme Court holdings concerning Fourteenth Amendment due process limits on interstate taxation when it has found limits on municipal, intrastate taxation. It has not at any time relied on our state constitution in considering the question. *See Dravo Corp. v. Tacoma, supra; Tacoma v. Hyster Co., supra; Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972).

erred in concluding that Fiberchem's activities in Tacoma were so minimal that a taxation of those activities for "engaging in business" there could not be justified consistently with due process.

Tacoma correctly argues, in respect to the first subtest for nexus, that it provides the benefit of an "orderly, civilized society", thereby enabling Fiberchem to engage in business activity there. *See Dravo Corp.*, 80 Wn.2d at 598. Because Fiberchem itself testified that some activities take place in Tacoma, the City easily establishes the first link in the nexus.

However, the undisputed testimony and evidence of record fails to prove that those few activities actually performed in Tacoma bear any fair and reasonable relation to the proceeds of sales to Tacoma customers, because any causal relationship between the two elements is speculative in the extreme. Fiberchem demonstrated to the satisfaction of the trial court, and to our satisfaction, that the sales activity that directly generated proceeds was almost entirely conducted by telephone communication to Tukwila initiated by Tacoma customers. Indeed, the evidence indicates that the major portion of the little time spent by salespeople in Tacoma as they passed through the city was spent with a very small segment of its Tacoma customers, in any case. On this evidence, we cannot conclude that the statutory measure of taxation, the gross proceeds of business with Tacoma customers, would be fairly related in this case to the few customer contacts that actually take place in Tacoma. Therefore, the necessary final link in the nexus between Tacoma and Fiberchem's activities within Tacoma cannot be established. The trial court therefore did not err in concluding that Tacoma could not tax Fiberchem's activities within Tacoma without depriving Fiberchem of property without due process of law.

Judgment affirmed.

WORSWICK, C.J., concurs.

PETRICH, J. (dissenting)—The majority concludes that the imposition of Tacoma's business and occupation tax on Fiberchem violates due process because the activities that Fiberchem actually performed in Tacoma do not bear any fair and reasonable relation to the proceeds of its sales to Tacoma customers. I believe that the majority focuses too narrowly on the extent of the physical presence of Fiberchem's salespeople in Tacoma for the purpose of directly generating sales when it determines the activities actually performed in Tacoma, and I dissent.

In holding that there was no fair and reasonable relation between activities and proceeds, the majority relies on the trial court's findings that (1) over 99 percent of orders from Tacoma customers are telephoned to Fiberchem at its Tukwila office, and (2) the salesman whose territory includes Tacoma only spends 6 percent of his working time contacting Tacoma customers. This focus overemphasizes the importance of the physical presence of Fiberchem's salespeople to generate sales and undervalues findings that demonstrate the other activities that its salespeople perform. The trial court found that one–third of Fiberchem's Tacoma customers are contacted by field salespeople and that those customers constitute the majority of Fiberchem's sales in Tacoma. The fact that these salespeople do not take orders when they are in the field does not mean that they do not engage in activities that are related to the generation of proceeds. They serve as manufacturers' representatives for the products that Fiberchem distributes, and as such provide assistance to customers. They then turn over the actual ordering of the desired products to the Tukwila office. This centralized ordering system does not affect the validity of the tax.

> The fact that the value which the gross receipts measure is, in large part, the result of activity *outside* the territorial limits of the taxing jurisdiction does not mean the gross receipts are not fairly related to the activity *within* the jurisdiction.

*Dravo Corp. v. Tacoma*, 80 Wn.2d 590, 599, 496 P.2d 504

(1972).

The majority concludes by stating that "the sales activity that directly generated proceeds was almost entirely conducted by telephone communication to Tukwila initiated by Tacoma customers" and that "the major portion of the little time spent by salespeople in Tacoma as they passed through the city was spent with a very small segment of its Tacoma customers". Majority, at 545. This suggests that in order to allow imposition of the business and occupation tax, the court must find that some substantial amount of the sales activities must be conducted by salespeople physically located in Tacoma and that such sales must be conducted with a substantial number of the customers in Tacoma, regardless of the frequency or quantity of their purchases. Such a standard considerably exceeds the sufficient nexus or minimum connection test employed in *Tacoma v. Hyster Co.*, 93 Wn.2d 815, 819, 613 P.2d 784 (1980) and *Dravo Corp. v. Tacoma, supra.* I would conclude that because Fiberchem's field salespeople contact the Tacoma customers who generate the majority of its sales and assist those customers as manufacturers' representatives, Fiberchem's activities in Tacoma were fairly and reasonably related to its sales proceeds. *See Standard Pressed Steel Co. v. Department of Rev.*, 10 Wn. App. 45, 49–52, 516 P.2d 1043 (1973), *review denied,* 83 Wn.2d 1008 (1974). This could satisfy the sufficient nexus test, and I would reverse and remand the trial court's dismissal.

Review denied by Supreme Court October 28, 1986.