[No. 54653-3. En Banc. July 14, 1988.]

THE CITY OF SEATTLE, ET AL, *Respondents,* v. PASCHEN CONTRACTORS, INC., *Appellant.*

---

*Barokas & Martin,* by *Larry L. Barokas,* for appellant.

*Douglas N. Jewett, City Attorney for the City of Seattle, Jorgen G. Bader, Assistant,* and *Ronald C. Dickinson, City Attorney for the City of Mercer Island,* for respondents.

CALLOW, J.—The Cities of Seattle and Mercer Island (Cities) brought this action against Paschen Contractors, Inc. (Paschen) to collect unpaid business and occupation taxes. The trial court granted the Cities' motion for summary judgment. Paschen appeals. We affirm.

On or about May 19, 1982, the Washington State Department of Transportation awarded Paschen a contract for $32,769,332.37 for the construction and installation of anchors and pontoons for Phase I of the third Lake Washington Floating Bridge. Paschen constructed the anchors and pontoons in Everett. The components subsequently

were towed to Lake Washington and installed at a site in the lake partially within the city of Seattle and partially within the city of Mercer Island. The City of Everett levied B&O taxes based on Paschen's construction of the anchors and pontoons in Everett. Additionally, Seattle and Mercer Island levied B&O taxes based on the installation of the anchors and pontoons in Lake Washington.

Paschen asserts that 68.8 percent of the total payments it received under the contract were attributable to work performed in Everett, 19.0 percent to work performed in Mercer Island, and 12.2 percent to work performed in Seattle. Accordingly, Paschen made payments of B&O taxes to the three cities as follows:

| | |
|---|---|
| $22,532.00 | Everett |
| 5,856.09 | Mercer Island |
| 7,347.97 | Seattle |

Paschen apparently arrived at these figures by multiplying the total contract price by the B&O tax rate of each city and then apportioning its total tax payment according to the proportion of work performed in each city. However, Mercer Island and Seattle assessed taxes on the total contract price, without allowing Paschen to offset the amount of taxes paid to Everett. Seattle and Mercer Island based their tax assessments on the allocation of gross receipts from the construction contract made by the State for sales tax purposes. Consequently, Seattle calculated Paschen's B&O tax liability to be $22,103.83. Mercer Island calculated Paschen's B&O tax liability to be $20,283.46.

On June 9, 1985, Seattle and Mercer Island filed a complaint against Paschen to recover unpaid B&O taxes. The Cities subsequently moved for summary judgment, and Paschen filed a countermotion for summary judgment. After a hearing, the trial court granted the Cities' motions for summary judgment, awarding $18,754.05 to Seattle and $21,279.98 to Mercer Island.

Paschen asserts:

1. the B&O tax ordinances of the Cities facially discriminate against those who manufacture outside, but sell inside, the Cities;
2. the B&O tax ordinances of the Cities violate due process;
3. there is no rational relationship between the construction activity in Everett and the taxes imposed by the Cities;
4. an exclusion for revenue from construction activities should have been granted; and
5. Paschen should have been allowed deductions for monies paid to it for the benefit of its subcontractors, suppliers and others.

## A
### UNLAWFUL DISCRIMINATION

A B&O tax is an excise tax imposed upon the act or privilege of engaging in business activities, for which the taxing authority provides services, measured by the application of a legislatively set rate against a valuation of the operation of the business, established by some standard such as gross revenues, gross sales, gross income, or the valuation of products. *P. Lorillard Co. v. Seattle*, 83 Wn.2d 586, 521 P.2d 208 (1974); *Greyhound Lines, Inc. v. Tacoma*, 81 Wn.2d 525, 503 P.2d 117 (1972); *Dravo Corp. v. Tacoma*, 80 Wn.2d 590, 496 P.2d 504 (1972); RCW 82.04.220; 16 E. McQuillin, *Municipal Corporations* § 44.191 (3d ed. 1984); Comment, *The Scope of Washington's Business & Occupation Tax*, 35 Wash. L. Rev. 121 (1960).

Paschen contends that the Seattle and Mercer Island B&O tax ordinances unlawfully discriminate against those who manufacture outside but sell inside the taxing jurisdiction. Seattle Municipal Code (SMC) 5.44.030 provides that "[t]here is levied upon and shall be collected from and paid as hereinafter provided by every person on account and for the privilege of engaging in business activities, a license fee or occupation tax . . ." The tax is levied upon those engaging in extracting, manufacturing, sales, and other business

activities. The Mercer Island City Code (MICC) includes a virtually identical provision. *See* MICC 4.10.030. SMC 5.44.030(E) provides that the B&O tax shall be levied

[u]pon every person engaging within this City in the business of . . . (2) building, repairing or improving any publicly owned street, place, road, highway, bridge or trestle which is used, or to be used, primarily for foot or vehicular traffic; as to such persons the amount of tax on such business shall be equal to the gross income of the business multiplied by the rate of one hundred eighty–five (185) one–thousandths of one percent (1%).

MICC 4.10.030(D) provides that the B&O tax shall be levied

[u]pon "every person engaging within this city in the business of . . . (2) building, repairing or improving any publicly owned street, place, road, highway, bridge or trestle which is used, or to be used, primarily for foot or vehicular traffic, the amount of tax on such business shall be equal to the gross income of the business multiplied by the rate established by the city council from time to time by resolution.

Each ordinance includes a multiple activities exemption whereby persons engaging in more than one type of activity will not be taxed separately for each type of activity. SMC 5.44.050 states:

Every person engaging in activities which are within the purview of the provisions of two or more subsections designated A, B, C, E and F of Section 5.44.030, shall be taxable under each applicable subsection; provided, that persons taxable under subsection C of Section 5.44.030 on products sold within the City for delivery within the state shall not be taxable under Subsections A or B thereof with respect to extracting or manufacturing of such products so sold, and that persons taxable under subsection B thereof shall not be taxable under subsection A thereof with respect to extracting the ingredients of the product so manufactured.

MICC 4.10.040 states:

Every person engaging in activities which are within the purview of the provisions of two (2) or more subsections designated A, B, C, D, E, F, G and H of Section

4.10.030 shall be taxable under each applicable subsection; provided, that persons taxable under subsection C of said section on products sold within the city for delivery within the state shall not be taxable under subsections A and B thereof with respect to extracting or manufacturing of such products so sold, and that persons taxable under subsection B thereof shall not be taxable under subsection A thereof with respect to extracting the ingredients of the products so manufactured.

Thus, each ordinance provides that persons engaging in both manufacturing and sales activity within the taxing jurisdiction may not be required to pay taxes with respect to manufacturing the products sold. Additionally, persons engaged in both manufacturing and extracting activity will not be required to pay taxes with respect to extracting.

Paschen contends that these multiple activities exemption provisions unlawfully discriminate against those who manufacture outside but sell inside the taxing jurisdiction. In this case, Everett levied B&O taxes on Paschen for the actual construction of anchors and pontoons occurring within the city of Everett. In addition, Seattle and Mercer Island levied B&O taxes for the installation of the anchors and pontoons in Lake Washington. However, the Seattle and Mercer Island tax assessments were based on the entire contract price rather than just the portion relating to installation. Paschen asserts that because the manufacture of the anchors and pontoons did not occur in Seattle or Mercer Island, it can offset the taxes paid to Everett to reduce its tax liability to Seattle and Mercer Island. Paschen contends that the resulting "double taxation" constitutes unfair discrimination.

Paschen relies on *Tyler Pipe Indus. v. Washington Dep't of Rev.,* 483 U.S. 232, 97 L. Ed. 2d 199, 107 S. Ct. 2810 (1987). In *Tyler Pipe,* numerous companies challenged the multiple activities exemption contained in the Washington B&O tax statute. RCW 82.04.440 provided that persons engaged in both manufacturing and wholesaling activities within the state would only be taxed on their wholesaling activities. The Supreme Court held this statute invalid

under the interstate commerce clause, stating that "[t]he current B&O tax exposes manufacturing or selling activity outside the state to a multiple burden from which only the activity of manufacturing in–state and selling in–state is exempt." *Tyler Pipe,* 97 L. Ed. 2d at 214.

*Tyler Pipe* does not require a similar result here. In *Tyler Pipe,* the Court invalidated Washington's multiple activities exemption statute under the interstate commerce clause of the United States Constitution. No comparable provision exists with respect to *intrastate* commerce in either the United States or Washington Constitutions, and intrastate commerce is not protected as is interstate commerce. Thus, *Tyler Pipe* cannot be advanced as a basis for invalidating the Seattle and Mercer Island B&O tax ordinances.

Furthermore, exposure to double taxation is not in itself evidence of unlawful discrimination. "There is no constitutional prohibition against double taxation, as applied to excise taxes." *Drury the Tailor v. Jenner,* 12 Wn.2d 508, 514, 122 P.2d 493 (1942); *Texas Co. v. Cohn,* 8 Wn.2d 360, 386, 112 P.2d 522 (1941); *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 79, 34 P.2d 363 (1934). Finally, Paschen would not be protected by the Seattle and Mercer Island multiple activities exemption ordinances even if it both manufactured and installed the anchors and pontoons in those jurisdictions. SMC 5.44.050 provides that persons taxable under SMC 5.44.030(C) are not taxable under subsections (A) and (B) of that provision. Paschen is being taxed under subsection (E). Similarly, MICC 4.10.040 provides that persons taxable under MICC 4.10.030(C) are not taxable under subsections (A) and (B) of that provision. Paschen is being taxed under subsection (D). Thus, Paschen is not being unfairly discriminated against as an out–of–city manufacturer; it would be subject to double taxation if it had manufactured the anchors and pontoons within Seattle or Mercer Island.

## B
### VIOLATION OF DUE PROCESS

■ Paschen contends that the B&O taxes imposed by Seattle and Mercer Island violate the due process clauses of the United States and Washington Constitutions. Due process requires a "reasonable relationship between the event taxed and the benefit conferred." *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 598, 496 P.2d 504 (1972); *see also Tacoma v. Hyster Co.,* 93 Wn.2d 815, 819, 613 P.2d 784 (1980).

In *Dravo,* the City of Tacoma levied a tax on the gross receipts of a contract that was executed in Tacoma but performed entirely in Lewis County. The court held that the imposition of a B&O tax by the City of Tacoma complied with due process requirements because the City provided an "environment of an 'orderly, civilized society'" in which Dravo was able to engage in a business transaction. *Dravo,* at 598. "A taxing authority is empowered to tax activity within its jurisdiction because it provides an environment of services and protection, which enable the taxpayer to engage in the activity that is the subject of the tax." *Dravo,* at 597–98.

The court then considered whether the measure of the tax imposed by Tacoma reasonably related to the activity taxed. Answering this question in the affirmative, the court noted:

> The fact that the value which the gross receipts measure is, in large part, the result of activity *outside* the territorial limits of the taxing jurisdiction does not mean the gross receipts are not fairly related to the activity *within* the jurisdiction. There is no constitutional objection to resorting to extraterritorial elements in determining the *measure* of a tax.

*Dravo,* at 599. Thus, the fact that the contract was performed entirely in Lewis County did not preclude Tacoma from levying a B&O tax on the gross proceeds of the entire contract.

In *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972), the City of Tacoma sought to impose B&O taxes upon tickets sold by Greyhound in the Tacoma bus depot. The City did not tax tickets sold outside of Tacoma, nor did it tax any part of the fare collected for the transportation of passengers or freight into or through Tacoma. *Greyhound,* at 526–27. The court noted that the City of Tacoma "provides fire and police protection, maintains city streets over which [Greyhound's] vehicles travel, and renders many other services." *Greyhound,* at 527. The court concluded that the sale of the tickets in Tacoma formed a sufficient nexus, and upheld the City's imposition of a B&O tax on tickets sold at the Tacoma depot.

In *Tacoma v. Hyster Co., supra,* Tacoma sought to impose B&O taxes on a company engaged in the sales and service of forklift trucks. The company's primary office was in Seattle, but it had salesmen and servicemen in the Tacoma area. Additionally, Hyster was listed in the Tacoma telephone books, conducted direct mail solicitations of customers in Tacoma, and advertised in various publications circulated in Tacoma. *Hyster,* at 817. The court concluded that these activities provided a sufficient nexus with Tacoma to allow the City to impose B&O taxes on *Hyster. Hyster,* at 820.

We conclude that a reasonable relationship exists between the B&O taxes imposed by Seattle and Mercer Island and the benefits conferred upon Paschen by those cities. Paschen spent a substantial amount of time installing the anchors and pontoons at the Lake Washington site. During this time, it was able to avail itself of the services provided by Seattle and Mercer Island, including police and fire protection, housing, streets, and other benefits. The relationship between Paschen and Seattle and Mercer Island is no less substantial than that involving the taxing entity and the taxpayer in *Dravo, Greyhound,* and *Hyster.* Furthermore, as noted in *Dravo,* Seattle and Mercer Island are not precluded from imposing a tax on the entire contract price simply because some of the business activity under the contract occurred outside those jurisdictions.

The term "activity" appears to mislead those who would understand the impact of the tax. "Activity", insofar as relating to that upon which tax is to be imposed, relates not to the honey made by the bees in the hive during a segment of time but to the monetary worth of the entire hive. It is the value of the business enterprise for which services are available that forms the base upon which the tax rate is to be applied, not solely some portion thereof which is completed within the environs of the taxing authority that comprises only a part of the protected enterprise.

The Cities are providing police and fire protection as well as other services to the Paschen business activity. That activity has a value of $32,769,332.37 as measured by the contract price. It is that value which is being serviced by the respective cities and as that valuable enterprise relies upon the respective taxing authorities for services, the service providers can look to whether the business activity is a molehill or a mountain. Here each taxing authority is providing proprietary services for a $32,769,332.37 mountain of activity and may impose taxes accordingly.

We find no violation of due process.

## C
### DEDUCTIONS CLAIMED ON ACCOUNT OF RETAINAGE

Paschen contends that the trial court erred by failing to deduct amounts withheld from Paschen for payment of subcontractors or materialmen, and taxes. RCW 60.28-.010(1) provides in part:

Contracts for public improvements or work, other than for professional services, by the state, or any county, city, town, district, board, or other public body, herein referred to as "public body", shall provide, and there shall be reserved by the public body from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum not to exceed five percent, said sum to be retained by the state, county, city, town, district, board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or

the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work, and the state with respect to taxes imposed pursuant to Title 82 RCW which may be due from such contractor.

The funds are retained by the public body until 30 days after final acceptance of the project. RCW 60.28.010(2). RCW 60.28.020 provides:

> After the expiration of the thirty day period, and after receipt of the department of revenue's certificate, and the public body is satisfied that the taxes certified as due or to become due by the department of revenue are discharged, and the claims of materialmen and laborers who have filed their claims, together with a sum sufficient to defray the cost of foreclosing the liens of such claims, and to pay attorneys' fees, have been paid, the public body shall pay to the contractor the fund retained by it or release to the contractor the securities and bonds held in escrow.

Paschen contends that the funds retained by the State are pass–through payments and should be deducted from the total contract price when calculating B&O taxes. SMC 5.44.030(E) provides that the B&O tax shall be based on the gross income of the business. MICC 4.10.030(D) includes a similar provision. Gross income is defined by both Seattle and Mercer Island as:

> [T]he value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, compensation for the rendition of services, gains realized from trading in stocks, bonds or other evidences of indebtedness, interest, discount, rents, royalties, fees commissions, dividends and other emoluments however designated, all without any deduction on account of the cost of tangible property sold, *the cost of materials used, labor costs,* interest, discount, delivery costs, *taxes* or any other expense whatsoever paid or accrued and without any deduction on account of losses.

(Italics ours.) MICC 4.10.020(J); *see* SMC 5.44.020(A)(8); *see also* RCW 82.04.080.

In support of its argument, Paschen cites *Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Rev.*, 103 Wn.2d 183, 691 P.2d 559 (1984), which addressed whether client reimbursements to attorneys who had made advances for such things as expert fees, fall within the definition of gross income under RCW 82.04.080. In *Walthew,* the State assessed B&O taxes on reimbursements for payments made by the law firm to court reporters, doctors, and process servers. *Walthew,* at 184. The court stated that "pass–through payments of the type represented here . . . are not the type of reimbursements the Legislature contemplated for inclusion in gross income . . ." *Walthew,* at 186. The court noted that the attorney is merely acting as an agent for the client in making the initial payments to the third parties, and has no personal liability for these payments. *Walthew,* at 188.

 The type of payments at issue in this case are not analogous to the reimbursements described in *Walthew.* In this case, the money actually belongs to the contractor, and is only retained by the State if the contractor fails to fulfill its financial obligations to others. Allowing a deduction for B&O tax purposes would provide an economic advantage in having laborers and taxes paid through the fund and would discourage the prompt payment of claims when due—one of the main purposes of statutory retainage. Funds which are retained or "held back" but which ultimately will be paid over to the contractor form a part of the total contract price. It is proper that such funds be included in the base upon which the tax rate is to be applied. They are a portion of the consideration to Paschen. *See E.I. Du Pont de Nemours & Co. v. State,* 44 Wn.2d 339, 267 P.2d 667 (1954).

We conclude that the imposition of B&O taxes on the full contract price by Seattle and Mercer Island does not constitute unlawful discrimination, nor does it violate due process requirements. Furthermore, Paschen is not entitled to any deduction in taxes for the amount retained by the State pursuant to RCW 60.28.010. We affirm the trial

court's decision granting summary judgment in favor of Seattle and Mercer Island.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied November 16, 1988.