[No. 55471–4.   En Banc.   December 21, 1989.]

RALPH BURBA, ET AL, *Appellants,* v. THE CITY
OF VANCOUVER, *Respondent.*

*James L. Sellers* and *James D. Hamilton,* for appellants.

*Sirianni & Youtz,* by *Michael A. Small; Jerry F. King, City Attorney,* for respondent.

*Sandra Driscoll, Kent City Attorney,* and *Carolyn Lake, Assistant; Bruce E. Jones, Everett City Attorney,* and *Elmer E. Johnston, Jr., Special Counsel,* on behalf of Washington State Association of Municipal Attorneys, amici curiae for respondent.

DORE, J.—Nonresident customers of the City of Vancouver's municipal utility brought a class action against Vancouver alleging that a city gross receipts tax levied against utility revenues received for water and sewer services from resident and nonresident retail customers was illegal and unconstitutional. We hold that the gross receipts tax assessed against resident and nonresident users is legal and constitutional. We affirm.

## FACTS

The pertinent facts are undisputed. The City of Vancouver owns and operates a water and sewer utility serving wholesale and retail customers located inside and outside the city limits. The Utility provides water and sanitary sewer service to most of the metropolitan area through a single integrated utility system. The Utility makes no distinction between city residents and nonresidents in marketing water and sewer services.

The Utility's waterworks consist of 550 miles of transmission and distribution piping that delivers water from wells and reservoirs to industrial, commercial, and residential users. Although a majority of the Utility's customers reside outside the city limits, the Utility's largest wells and

storage facilities are located within the city and approximately 70 percent of all water delivered by the Utility comes from wells located in the city. While some nonresidents' water comes from wells located outside the city, they may receive water from city wells at times of peak usage.

Water drawn from city wells is treated by the Utility at the well site and stored in reservoirs or tanks inside the city. Treated water is transmitted to customers through pipes placed in city rights of way and, where applicable, in Clark County rights of way pursuant to a franchise agreement between the City and the County. The Utility operates the entire waterworks through a telemetry surveillance system which permits the Utility to monitor and control the flow of water in the system from a communication center located in the city.

The Utility collects, treats and discharges waste water through approximately 366 miles of sewer lines and various pumping stations. All waste water collected travels through the sewer system to one of the Utility's two treatment plants, which are located within the city.

All billing, accounting, purchasing and administrative functions for water and sewer utility operations are performed inside the city. All engineering and shopwork for the Utility take place in facilities located within the city. To obtain access to the Utility's water and sewer service lines, new customers enter into a written contract executed at the Utility's offices in the city.

Initially established to provide utility services to the residents of the city, the City has expanded its water and sewer systems to enable the Utility to provide services to the Utility's entire service area. The City's financial resources, its bonding capacity, its overall management capability and its responsibility for the system provide both direct and indirect benefits to the Utility and its resident and nonresident customers.

Since 1954, the City has imposed a tax on the Utility. Pursuant to Vancouver Municipal Code 5.92.010,[1] the utility tax is calculated as a percentage of the Utility's gross receipts from metered water and sewer service to retail customers residing both inside and outside of the city. The tax does not apply to nonrate revenues nor to receipts from the Utility's lone wholesale customer. The City collects the utility tax by transferring funds from the city utility fund to the city general fund. The Utility treats the tax as an operating expense and considers the tax when fixing utility rates for all retail customers.

Nonresident Utility customers brought a class action suit challenging the validity of the Utility's inclusion of the City's gross receipts tax in rates charged to nonresidents. The plaintiff class sought declaratory and injunctive relief and a refund of the portion of the tax allocable to revenues collected from nonresidents.

After a trial on exhibits and stipulated facts, the trial court found that the taxable events upon which the tax is levied occur within the city. The court also found that the rates charged to nonresidents were fair and reasonable and that the Utility would be justified in charging the same rates even if the gross receipts tax had not been factored into the rate structure. The trial court entered judgment in favor of the City. The plaintiffs appeal directly to this court.

## KING CY. WATER DIST. 75 V. SEATTLE
## IS NOT CONTROLLING

The plaintiffs argue that the Utility's treatment of the tax as an operating expense factored into rates charged to

---

[1]Vancouver's tax ordinance provides:

"There is levied and there shall be collected from the water–sewer department of the city of Vancouver a tax in the amount of fourteen and three–fourths percent of the gross receipts of the accounts in such department; provided, the tax is not levied and shall not be collected upon receipts received by the city from any public sewer district." Vancouver Municipal Code 5.92.010 (1987).

both resident and nonresident users constitutes an attempt by the City to directly tax persons outside its political jurisdiction. In support of their argument, plaintiffs rely almost exclusively on *King Cy. Water Dist. 75 v. Seattle,* 89 Wn.2d 890, 577 P.2d 567 (1978). In *District 75* this court held that the Seattle Water Department could collect revenues to pay Seattle's business and occupation tax only from the beneficiaries of the tax, the utility customers residing in Seattle. *District 75,* at 903. The trial court found *District 75* distinguishable from the present case. We agree.

In *District 75,* the Seattle Water Department supplied water to two classes of customers, both inside and outside of the city limits: (1) retail customers, and (2) wholesale customers. The Department's rate structure distinguished between the two classes of customers and attempted to apportion costs. *District 75,* at 892. King County Water District 75, a wholesale customer, filed suit against the Department challenging certain elements of the rate structure that established the purchase price between the Department and wholesalers. Pertinent to the present case, Water District 75 challenged the Department's inclusion of Seattle's B&O tax in rates charged to wholesalers located outside the city limits. The trial court ruled in favor of the Department's inclusion of the B&O tax in rates charged nonresident wholesalers. On appeal, this court reversed holding that the "[c]ollection of such taxes must be exacted from the beneficiaries thereof, that is, the citizenry of the City of Seattle." *District 75,* at 903.

The facts of *District 75* differ substantially from the subject case. Water District 75 was located entirely outside the Seattle city limits. The Department sold the Water District water taken from rivers located outside the city and transported that water through water mains lying completely outside the city. More importantly, the plaintiff was a *wholesale* customer of the Department challenging the inclusion of the B&O tax in rates charged to nonresident *wholesalers,* not retail customers. *District 75,* at 892.

In its conclusions of law the trial court in the subject case stated:

The facts of this case depart in several major ways from the facts before the court in *King County Water District No. 75 v. Seattle*, 89 Wn.2d 890 (1978). The most striking difference in this case is that the customers in the unincorporated areas near Vancouver are being directly served by the City; they receive their water directly from City wells and all of their sewage is returned to the City for treatment. These factual distinctions are sufficient to provide a basis for reaching a different result from the decision in the [*sic*] *Water District No. 75*.

Clerk's Papers, at 137. Conclusion of law 7. The trial court correctly concluded that the holding of *District 75* does not control the present case.

### UTILITY TAX CONSTITUTIONAL

██ ██ The plaintiffs assert that the inclusion of the utility tax in rates charged to nonresident customers constitutes taxation without representation as the nonresidents do not have the right to vote in Vancouver's municipal elections. This court rejected a similar claim in *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976). In *District 54*, pursuant to statutory authority, the City of Des Moines assumed the jurisdiction, facilities and assets of Water District 54. *District 54*, at 534. Plaintiffs, who resided within the boundaries of the Water District but outside the city, filed suit alleging, *inter alia*, that the statute permitting Des Moines to assume control of the Water District was unconstitutional as it subjected to the authority of the City individuals who were unable to vote in city elections. *District 54*, at 544. Rejecting plaintiffs' constitutional claim, this court found that the statute was

accompanied by sufficient standards and safeguards to satisfy constitutional requirements. . . . Moreover, nonresidents of the city are protected from truly discriminatory, arbitrary, and unreasonable rates by the courts.

(Citations omitted.) *District 54*, at 546. In addition, nonresidents could attend and participate in public meetings conducted by the city council. *District 54*, at 546. Finding

that these procedural safeguards provided the nonresidents with adequate due process protection, this court upheld the statute as constitutional.

Recently, we held that a municipal sales tax collected from nonresidents did not violate the nonresidents' equal protection rights. *Fakkema v. Island Cy. Pub. Transp. Benefit Area,* 106 Wn.2d 347, 722 P.2d 90 (1986). In *Fakkema,* a nonresident of a public transportation benefit area claimed that a sales tax imposed within the benefit area violated his right to equal protection. The plaintiff argued that as the majority of his shopping occurred within the benefit area, he was indirectly subject to the sales tax. He asserted that the benefit area authority abridged his constitutional rights by denying him the opportunity to vote on the sales tax measure. *Fakkema,* at 353. Rejecting the plaintiff's equal protection claim, this court stated that the United States Supreme Court consistently holds that "bona fide residential requirements restricting the right to vote do not violate the equal protection clause." (Footnote omitted.) *Fakkema,* at 353. That proposition holds true even where a sales tax levied in a neighboring city imposes an indirect burden on nonresidents. This court found that the sales tax did not violate the plaintiff's constitutional right to equal protection.

The utility tax at issue withstands a constitutional attack. The plaintiffs are provided with procedural safeguards, including the right to attend and participate in public hearings, which satisfy constitutional due process requirements. In addition, the courts protect nonresidents from any potentially discriminatory, arbitrary, or unreasonable rates imposed by the Utility. Plaintiffs' inability to vote in Vancouver's municipal elections does not render the tax unconstitutional. Bona fide residential requirements placed on the right to vote do not violate the equal protection clause even where a tax levied on services provided imposes an indirect burden on nonresident customers. We hold that the City of Vancouver's utility tax is constitutional.

ANALYSIS

The utility tax at issue is similar to a business and occupation tax on the Utility's privilege of operating within the city. The indirect burden on nonresident consumers is analogous to a B&O tax levied on a retailer selling products or providing services to both resident and nonresident customers. Like Vancouver's utility tax, B&O taxes are assessed against the gross receipts of a business, are paid into the taxing authority's general fund, and are factored into the retailer's pricing decision.

■ The City contends that the analysis developed by this court to determine the validity of a B&O tax applies to the utility tax. The rule developed permits a state or municipality to levy taxes on nonresidents if there exists a "reasonable relationship between the event taxed and the benefit conferred." *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 598, 496 P.2d 504 (1972); *Seattle v. Paschen Contractors, Inc.,* 111 Wn.2d 54, 758 P.2d 975 (1988). The trial court found that the taxable event occurred within the city, that an adequate nexus existed between the City and the taxable event, and that the nonresidents received both direct and indirect benefits from the City. There is substantial evidence to support this finding, and we must accept it as a verity.

■ On several occasions this court has addressed the issue of the validity of levying a B&O tax on business activity occurring partially outside the territorial limits of the taxing unit.[2] In *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 496 P.2d 504 (1972), this court established limits on a municipal corporation's power to impose B&O taxes on local business activity. First, the taxable event upon which the tax is levied must be identified. Second, the taxable event must occur within the territorial limits of the taxing

---

[2]*See Seattle v. Paschen Contractors, Inc.,* 111 Wn.2d 54, 758 P.2d 975 (1988); *Tacoma v. Hyster Co.,* 93 Wn.2d 815, 613 P.2d 784 (1980); *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972); *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 496 P.2d 504 (1972).

authority. Finally, a definite link or connection must exist between the municipality and the event it seeks to tax.

In *Dravo,* this court upheld Tacoma's taxation of a construction contract entered into in Tacoma but otherwise performed in Lewis County. We stated that

> [a] taxing authority is empowered to tax activity within its jurisdiction because it provides an environment of services and protection, which enable the taxpayer to engage in the activity which is the subject of the tax.

*Dravo,* at 597–98. Tacoma possessed the authority to levy its B&O tax on the creation of the contract (the taxable event) because it provided Dravo with the benefit of an "'orderly, civilized society'" enabling Dravo to enter into a business transaction with the City of Tacoma. *Dravo,* at 598. Finding that the measure of the tax imposed by Tacoma reasonably related to the events taxed, this court stated:

> The fact that the value which the gross receipts measure is, in large part, the result of activity *outside* the territorial limits of the taxing jurisdiction does not mean the gross receipts are not fairly related to the activity *within* the jurisdiction. There is no constitutional objection to resorting to extraterritorial elements in determining the *measure* of a tax.

*Dravo,* at 599. This court concluded that the formation of the contract within the city of Tacoma constituted a sufficient connection between the City and Dravo to validate the City's taxation of the contract despite the fact that the performance of the contract occurred outside the city limits.

This court recently applied the *Dravo* analysis in *Seattle v. Paschen Contractors, Inc.,* 111 Wn.2d 54, 758 P.2d 975 (1988). Paschen entered into a contract with the Washington State Department of Transportation to build and install anchors and pontoons for the third Lake Washington Floating Bridge. The company constructed the components in Everett and towed them to Lake Washington for installation in portions of the lake partially within the city of Seattle and partially within the city of Mercer Island. Both Seattle and Mercer Island levied B&O taxes based on

the entire value of the contract. Paschen filed suit claiming that the tax should only apply to the portion of the contract completed within each municipality.

Upholding the cities' taxation of the entire contract, we concluded that a rational relationship existed between the tax imposed and the benefits the cities conferred upon Paschen. We found that Paschen spent a considerable amount of time installing the components which enabled the company to avail itself of the services provided by Seattle and Mercer Island, "including police and fire protection, housing, streets, and other benefits." *Paschen,* at 62. Stating that the relationship between the cities and Paschen was not substantially different from that found in prior cases, this court concluded that "Seattle and Mercer Island are not precluded from imposing a tax on the entire contract price simply because some of the business activity under the contract occurred outside those jurisdictions." *Paschen,* at 62.

Under the principles established in *Dravo* and *Paschen,* it is clear that the Utility validly included the expense of the gross receipts tax in the rates charged to its nonresident customers. The statute identifies the provision of water and sewer utility service as the event taxed. A majority of the activity taxed occurs within the territorial limits of the city. The trial court specifically found that a substantial portion of the water provided nonresidents originated in the city, that all processing of the water occurred within the city, that all maintenance and repair crews are located in and dispatched from the city, and that all sewage is returned to the city for treatment. As stated in *Dravo* and *Paschen,* it is not necessary that all of the activity taxed occur within the jurisdiction of the taxing authority to support the imposition of a tax on the gross receipts that activity generates.

Finally, a sufficient nexus exists between the City and the event taxed. As found by the trial court, nonresident customers received both direct and indirect benefits from the City as a result of the City's financial resources, its

bonding capacity and its willingness to provide utility services to individuals residing outside the city limits. The taxable event occurs substantially within the city and that activity constitutes an integral part of the provision of utility services to the Utility's nonresident customers.[3]

CONCLUSION

The City of Vancouver's utility tax is constitutional and properly assessed. The taxable event at issue occurs substantially within the city limits and a sufficient nexus exists between the City and the event taxed to justify its utility assessment against resident and nonresident users.

We affirm.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

---

[3]Courts in other jurisdictions have rejected challenges to surcharges imposed on utility service provided customers residing outside the territorial limits of the taxing authority. *See, e.g., Hansen v. San Buenaventura,* 42 Cal. 3d 1172, 729 P.2d 186, 233 Cal. Rptr. 22 (1986) (permitting a 70 percent surcharge); *Polk Cy. v. Florida Pub. Serv. Comm'n,* 460 So. 2d 370 (Fla. 1984) (upholding a 15 percent surcharge).