[No. 54882–0. En Banc. August 23, 1990.]

PAUL H. SCHMIDT, ET AL, *Appellants,* v. CORNERSTONE INVESTMENTS, INC., ET AL, *Defendants,* CLIFFORD B. WEISS, ET AL, *Respondents.*

150

152

*Roger M. Leed,* for appellants.

*Albert Hanan,* for respondents Weiss.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *John Q. Powers,* for respondents Brink.

*David H. Olwell,* for respondents Austin.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Charles Matthew Andersen* on behalf of Washington State Trial Lawyers Association, amici curiae for appellants.

*Russell C. Love* on behalf of Washington Defense Trial Lawyers, amicus curiae for respondents.

DOLLIVER, J.—In late 1982, Zeta Corporation, through its principal, defendant C.E. Austin, became interested in purchasing a piece of commercial property in Burien, Washington, known as the "Bargain Boys" property. The owner of the property was in bankruptcy, and negotiations for the sale were made through the bankruptcy trustee. In connection with the sale, the bankruptcy court was presented with two separate appraisals of Bargain Boys. One completed in June 1982 valued the property at $154,700. A July 1982 appraisal valued the property at $120,000. At the time of these appraisals, the property was in disrepair and required extensive remodeling. The bankruptcy court entered an order authorizing the sale to Zeta for a purchase price of $150,000. By this time, Zeta had formed a partnership with Grand Investments Company in order to finance the purchase.

In September 1982, after Zeta was given the authority to purchase the property (but before it actually had done so), defendant Austin retained the appraisal firm of Lamb,

Hanson, and Lamb (the appraiser) in order to obtain an opinion letter stating the probable fair market value of Bargain Boys. Austin told the appraiser he owned the building or that he "had an interest in it". Austin also requested the appraisal be made as if all required renovation had been completed. Following these instructions, the final appraisal, dated September 15, 1982, placed the "As Is" value of Bargain Boys at $460,000.

Also prior to the purchase by Zeta of the property for $150,000, it decided to sell the property to Cornerstone Investments for $200,000. In exchange for a warranty deed from Grand (Zeta assigned its interest in the property to Grand at the time of the purchase from the bankruptcy trustee), Cornerstone gave a promissory note for the purchase price. This transaction was largely completed without documentation through defendant Brink, an attorney who acted as escrow agent for the transaction.

In order to afford the $200,000 purchase price, Cornerstone contacted defendant Pacific Home Equity, Inc. (Pacific) and requested a second position deed of trust in the amount of $75,000. Cornerstone represented to Pacific the purpose of the second deed of trust would be to restore and repair the property. Pacific was given a copy of the $460,000 "As Is" appraisal.

On February 22, 1983, defendant Clifford B. Weiss, a sales agent for Pacific, went to the home of plaintiffs Paul and Grace Schmidt and convinced them to invest the required $75,000 in Bargain Boys. Both plaintiffs are retired and had only invested on a limited basis up to this time. Weiss told plaintiffs the property was owned by Cornerstone Investments, Inc., and that their investment would be used to repair the property. Weiss also told plaintiffs the investment would pay 20 percent interest. He also showed plaintiffs the $460,000 appraisal.

While plaintiffs were deciding whether to make the investment, Weiss informed them of Grand's first deed of trust. After assurances were made that this would not

adversely affect their investment, plaintiffs signed an escrow agreement giving Pacific the power to act as their agent for purposes of the investment. Plaintiffs also made out a check in the amount of $75,000 to Pacific. At no time did Weiss mention to plaintiffs the actual condition of the building, nor did plaintiffs make any effort to examine the property before making their final decision to invest their money.

As soon as Pacific received plaintiffs' check, it issued a $75,000 check to Brink, who acted both as escrow agent for the transaction and legal counsel for Zeta/Grand. Brink immediately made arrangements to purchase Bargain Boys for Zeta/Grand from the bankruptcy trustee. Brink then prepared a deed from Grand to Cornerstone, a note for the $200,000 purchase price, and a first deed of trust running back to Grand. Brink next closed the loan from plaintiffs to Cornerstone and at the same time issued a second deed of trust on the property to plaintiffs.

Brink made numerous payments in connection with costs accrued during the simultaneous closings. These payments included attorney fees and fees to Pacific pursuant to the escrow agreement. In the end, only $5,000 of the original $75,000 plaintiffs invested actually went into repairing Bargain Boys. A significant portion of the $75,000 was used to make interest payments to Grand from Cornerstone.

Plaintiffs received five interest payments on their investment before they were informed Cornerstone was going to default on the note. In order to preserve their second place interest, plaintiffs made payments to Grand on behalf of Cornerstone. These checks were made out to defendant Brink. Plaintiffs made a total of $12,500 worth of payments to Grand before Grand foreclosed on Cornerstone, thereby cutting off plaintiffs' interest. At the time Grand foreclosed, plaintiffs' out–of–pocket expenses totaled $87,500.

In January 1985, plaintiffs sued for damages resulting from their investment. In their complaint, plaintiffs alleged theories of conspiracy, fraud, negligent misrepresentation,

The Securities Act of Washington (RCW 21.20) and Consumer Protection Act (RCW 19.86) violations, and intentional and negligent infliction of emotional harm. Prior to trial, plaintiffs entered into two settlement negotiations, one with defendants Michie and Stroman (escrow agents in related transactions) for $20,000 and the other with the appraiser for $50,000. Pursuant to RCW 4.22.060, separate reasonableness hearings were held in conjunction with the settlements. The trial court approved the settlement with Michie and Stroman after declaring the $20,000 settlement was reasonable. After hearing testimony from the parties on the settlement with the appraiser, but refusing to hear from plaintiffs' expert witness, the court held $50,000 was an unreasonable settlement amount. Instead, the court declared $150,000 a more appropriate settlement. Plaintiffs settled with the appraiser for $50,000 in spite of the court's ruling. After being informed the settlement would be accepted, the court advised the parties it would entertain a motion for reconsideration of its ruling after the trial against the remaining defendants.

At trial, the court dismissed some of plaintiffs' claims for lack of evidence. The jury found Brink acted negligently as escrow agent; Weiss was negligent in his representation to the Schmidts and also violated the Consumer Protection Act; and Austin was liable for fraud, conspiracy and violation of the Consumer Protection Act. After calculating attorney fees and costs, prejudgment interest and a 10 percent reduction for plaintiffs' contributory fault share, the court reduced each defendant's total judgment by the $150,000 reasonableness figure. This resulted in the discharge, with prejudice, of the judgments against Weiss and Brink and a judgment against Austin totaling $67,196.70. The award against Austin, plus the settlements prior to trial, put plaintiffs' total recovery for their loss at $137,196.70.

Prior to entry of its final judgment, the trial court denied reconsideration of its reasonableness ruling.

Pursuant to RAP 4.2(a)(2), plaintiffs sought direct appeal to this court of the proceedings below. Defendants Austin and Brink filed numerous cross appeals as well. We granted review and affirm the trial court on all grounds. At the request of this court, the Washington State Trial Lawyers Association (WSTLA) and the Washington Defense Trial Lawyers (WDTL) submitted amici curiae briefs.

I

The first issue we address is whether the trial court erred in finding the $50,000 settlement between plaintiffs and the appraiser unreasonable. According to RCW 4.22.060(2):

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

██ The final report of the Senate Select Committee on Tort and Product Liability Reform contained the following comments on RCW 4.22.060:

The bill does not establish any standards for determining whether the amount paid for the release was reasonable or not. It is felt that the courts can rule on this issue without specific guidance from the Legislature. The reasonableness of the release will depend on various factors including the provable liability of the released parties and liability limits of the released party's insurance.

There is a legitimate concern that claimants will enter into "sweetheart" releases with certain favored parties. To address this problem, the section requires that the amount paid for the release must be reasonable at the time the release was entered into.

Senate Journal, 47th Legislature (1981), at 636.

As the above comments indicate, the Legislature was mainly concerned with two aspects of the settlement process: that the courts retain broad discretionary powers in

determining reasonableness, and that the interests of non-settling parties be taken into consideration throughout the proceeding.

■ An inquiry into reasonableness under RCW 4.22.060 necessarily involves factual determinations which will not be disturbed on appeal when supported by substantial evidence. *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 718, 658 P.2d 1230 (1983). Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the stated premise. *State v. Thetford*, 109 Wn.2d 392, 396, 745 P.2d 496 (1987).

■ In *Glover* we stated the trial court should consider the following in assessing reasonableness:

[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Glover,* at 717. No one factor should control, and the trial court must necessarily have discretion to weigh each case individually. *Glover,* at 718. We find in this case the trial court properly applied the considerations articulated in *Glover* in concluding the $50,000 settlement unreasonable. We also find substantial evidence in the record to support this conclusion.

In applying *Glover,* the trial court focused on several aspects of plaintiffs' case. These included: an affidavit previously submitted by plaintiff Paul Schmidt, wherein he stated had he not been shown the $460,000 appraisal prepared by Lamb, Hanson, and Lamb, he never would have invested in the property; defendants' argument at the hearing to the effect that the affidavit itself established the appraiser's liability to be roughly one–half plaintiffs' overall potential recovery; the fact insurance carriers for Brink and the appraiser were most likely in the best position to pay a

judgment in plaintiffs' favor; and the fact defendants successfully argued to the court the case was worth at least $300,000 although plaintiffs themselves had at times estimated the total value of damages to be more in the range of $600,000. We find these considerations, plus others articulated by the court in its oral ruling, sufficient to persuade a fair–minded person that $150,000 was a more reasonable settlement amount than the offered $50,000.

Plaintiffs also argue the trial court erred in denying their expert an opportunity to testify to the reasonableness of the $50,000 settlement. Whether expert testimony will be allowed in reasonableness hearings is left to the discretion of the trial judge. *Glover,* at 718 n.3. Nothing in the statute requires such testimony, however, and we are confident that trial judges will develop their own procedures for handling these cases. *Glover,* at 718 n.3. The trial Judge here refused plaintiffs' expert an opportunity to testify because he felt the parties themselves had provided ample material upon which to make a decision. We find no error in the trial court's decision in this regard and affirm. Amicus WSTLA urges us to revise the *Glover* requirements. We believe the *Glover* requirements are adequate and decline the invitation to change them.

Plaintiffs also contend the trial court erred in denying their motion for reconsideration of its reasonableness ruling. As we find the trial court's reasonableness ruling supported by substantial evidence, we also find no error in the decision of the court not to reconsider.

## II

The next issue we examine is whether RCW 4.22.060 is unconstitutional because it allows the trial court to reduce the total sum of an injured party's damage award by an amount determined by the trial court rather than by a jury. We note at the outset two procedural defects which, by themselves, persuade us plaintiffs have not properly presented their constitutional objections to this court.

■ According to RAP 10.3(a)(5), citations to legal authority and reference to relevant portions of the record must be included in support of issues raised on appeal. While plaintiffs do cite authority which establishes the constitutional right to trial by jury in some cases, they fail to cite legal authority supporting their specific constitutional challenge. *See also Smith v. King,* 106 Wn.2d 443, 451–52, 722 P.2d 796 (1986); *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 374, 617 P.2d 704 (1980). In addition, the briefing supplied by plaintiffs leaves some question as to the precise constitutional issue being raised. Without adequate, cogent argument and briefing, this court should not consider an issue on appeal. *Saunders v. Lloyd's of London,* 113 Wn.2d 330, 345, 779 P.2d 249 (1989). For these reasons, we find plaintiffs have not properly raised their constitutional issue on appeal.

Even had plaintiffs properly raised this issue, however, two cases cited by both amici WSTLA and WDTL in support of rejecting plaintiffs' constitutional argument persuade us RCW 4.22.060 is constitutional.

■ In *In re MGM Grand Hotel Fire Litig.,* 570 F. Supp. 913 (D. Nev. 1983), the court was asked to determine whether certain settlements in a wrongful death action were entered in "good faith" pursuant to Nev. Rev. Stat. § 17.245 (1979). *MGM,* at 926–27. The nonsettling litigants argued the court could not determine the good faith issue itself since good faith was a question which must be tried before a jury. *MGM,* at 926.

In ruling against trial by jury the court stated:

> There is no right to a jury trial under N.R.S. 17.245 because the issue of "good faith" and the amount of a credit to which a non–settling defendant would be entitled is one of "equity" for which there is no right to trial by jury. The policy of encouraging settlements under N.R.S. 17.245 would be impaired if multiple trials by jury would have to be held in order to determine whether a settlement was in "good faith." A non–settling party is fully protected by its ability to present counter–affidavits or evidence at a hearing on the issue of "good faith."

*MGM,* at 927. Amici also bring to our attention *Barreto v. Waukegan,* 133 Ill. App. 3d 119, 129, 478 N.E.2d 581 (1985) (no right to trial by jury on the issue of good faith of a settlement since the right to jury trial does not extend to special or statutory proceedings unknown at common law). As both of these cases indicate, the right to jury trial does not extend to procedures in equity, such as whether the amount of a proposed settlement is reasonable. Such questions are properly within the province of the trial court to decide.

## III

We next consider whether the trial court erred by reducing the jury's award against each defendant by the $150,000 reasonableness figure and plaintiffs' 10 percent contributory fault share. Plaintiffs argue the court should have excluded their recovery for conspiracy, fraud and Consumer Protection Act violations before applying the $150,000 offset since the definition of "fault" under RCW 4.22 does not include intentional torts. Plaintiffs also argue their contributory fault share should not have been used to reduce defendants' liability for intentional torts.

RCW 4.22.015, which defines "fault" for the purpose of RCW 4.22, provides:

"Fault" includes acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

A comparison of fault for any purpose under RCW 4.22.005 through 4.22.060 shall involve consideration of both the nature of the conduct of the parties to the action and the extent of the causal relation between such conduct and the damages.

The Senate Select Committee on Tort and Product Liability Reform in its final report made the following comment on the statute:

The definition is intended to encompass all degrees of fault in tort actions short of intentionally caused harm. This would

include negligence, gross negligence, recklessness, willful and wanton misconduct and strict liability. . . . The idea is to permit the trier of fact to consider all the conduct short of what would be considered an intentional tort and make a reduction of the plaintiff's recovery for his or her share. In making its determination the trier of fact may take into consideration both the nature of conduct and the causal relationship between that conduct and the harm. This will mean, for example, that plaintiff's contributory negligence may not reduce recovery as much in a strict liability action as it would in a negligence action.

Senate Journal, 47th Legislature (1981), at 635.

 Although the Legislature's intent to exclude intentional conduct from the definition of fault is clear, we do not believe the trial court erred in applying the offset and contributory fault share against the sum total of each judgment. RCW 4.22.060(2) itself requires the *claim* of the releasing person against other persons to be reduced by the reasonableness figure. Nowhere does RCW 4.22.060 contemplate reducing portions of the releasing person's award depending on whether individual claims within the overall claim are based on intentional or negligent conduct.

Furthermore, plaintiffs' argument does not account for the fact defendants in this case were jointly and severally liable for damages caused by their conduct. The trial court considered this in rejecting plaintiffs' argument below. Under plaintiffs' interpretation of the statutory scheme, we would be compelled to remand this case with instructions to the jury to award specific monetary values for intentional conduct and separate amounts for negligence based claims. Since neither plaintiffs nor defendants addressed joint and several liability in their briefs or at oral argument, we will not consider the issue sua sponte.

 Plaintiffs also argue the trial court erred by instructing the jury on contributory negligence. However, when plaintiffs' counsel made his exception to the court's instruction, he merely stated that as a matter of law no contributory negligence existed. One who objects to a jury instruction shall state distinctly the matter to which he objects and the grounds of his objection, specifying the

number, paragraph or particular part of the instruction to be given or refused and to which the objection is made. CR 51(f). The purpose of taking exceptions to instructions is twofold: first, to sufficiently apprise the trial court of any alleged error in order to afford it the opportunity to correct the matter if necessary, and second, to prevent the unnecessary expense of a second trial. *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 244–45, 728 P.2d 585 (1986). Plaintiffs' objection does not meet the necessary criterion for proper preservation. We affirm the court's decision to give a contributory fault instruction.

### IV

We next address briefly whether the trial court erred in its calculation of prejudgment interest as part of plaintiffs' recoverable damages. The parties stipulated before trial that prejudgment interest as an aspect of damages would be decided by the trial court rather than the jury. In its memorandum opinion, the trial court entered findings of fact awarding $28,190 in prejudgment interest against each defendant. In their brief, plaintiffs state they previously submitted to the trial court prejudgment figures on their out–of–pocket expenses which amounted to over $30,000 computed at the statutorily mandated rate of 12 percent per annum. *See* RCW 19.52.020(1). However, plaintiffs neither cite to the record to support this statement, nor have they submitted to this court any alternative calculation of their own which would support remanding this issue to the trial court. As we have previously stated, it is not the function of the trial court or appellate courts to do counsel's thinking and briefing. *Orwick v. Seattle,* 103 Wn.2d 249, 256, 692 P.2d 793 (1984). We affirm the trial court's prejudgment interest calculation.

### V

We next examine whether the trial court erred by awarding attorney fees to plaintiffs under RCW 19.86.090, Washington's Consumer Protection Act. According to the act, a party who successfully brings an action under it is

entitled to recover the costs of bringing the suit along with reasonable attorney fees and costs. RCW 19.86.090.

The jury found Austin liable for fraud, conspiracy and Consumer Protection Act violations. The trial court found proof of plaintiffs' conspiracy and fraud claims inextricably related to proof of their Consumer Protection Act claim. After adding up the jury's award, and taking into consideration the 10 percent reduction for plaintiffs' contributory negligence, the court added attorney fees, costs and punitive damages, which resulted in a judgment against Austin of $217,196.70. The court then reduced this judgment by the $150,000 reasonableness amount, which resulted in a final judgment against Austin totaling $67,196.70.

Austin argues plaintiffs should not have been awarded any fees or costs under the Consumer Protection Act because they were not the prevailing parties in the action. Austin bases his argument on the fact the $150,000 reasonableness amount exceeded the sum of the judgment against him prior to calculating in attorney fees and costs.

■■■ We are not persuaded the trial court erred in calculating attorney fees and costs before subtracting the $150,000 offset for several reasons. First, a prevailing party is generally one who receives a judgment in its favor. *American Fed. Sav. & Loan Ass'n v. McCaffrey*, 107 Wn.2d 181, 195, 728 P.2d 155 (1986) (citing *Ennis v. Ring*, 56 Wn.2d 465, 473, 353 P.2d 950 (1959)). Plaintiffs prevailed against Austin on fraud, conspiracy and Consumer Protection Act grounds. In addition, the Consumer Protection Act itself provides that one who successfully brings an action under the act is entitled to attorney fees and costs. Plaintiffs were entitled to fees and costs under the act regardless of whether the reasonableness figure rendered at the hearing exceeded the jury's award on these claims. The fact is, plaintiffs prevailed on their Consumer Protection Act claim. We find the trial court properly offset the judgment against Austin after calculating the appropriate attorney fees and costs to which plaintiffs were entitled under RCW 19.86.090.

## VI

The next issue we examine is whether the trial court erred in dismissing some claims against Brink and Austin while allowing others to go to the jury. We first examine claims against Brink which plaintiffs argue on appeal were dismissed in error.

 Pursuant to a motion filed by Brink, the trial court dismissed plaintiffs' conspiracy, fraud, Consumer Protection Act and securities act claims against him on the grounds of insufficient evidence. In considering a motion for directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 73, 684 P.2d 692 (1984). The motion should be granted only if it is determined there is no evidence or reasonable inferences therefrom which would sustain a jury verdict in favor of the nonmoving party. *Davis,* at 73 (citing *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978)).

At trial, no evidence was submitted which showed Brink had any contact with the appraisers, or that he was involved in marketing Bargain Boys or in soliciting plaintiffs to make the investment. In fact, the evidence showed Brink met plaintiffs for the first time many months after they made their initial investment. The trial court correctly concluded there was insufficient evidence to sustain a reasonable inference of liability on Brink's behalf for any claims other than those relating to breach of his fiduciary duty as escrow agent/attorney and any foreseeable emotional damage resulting from this breach. We affirm the trial court's dismissal of these claims against Brink.

 We note Brink himself raises several cross appeals concerning claims against him which were submitted to the jury. However, this court is not obliged to decide all the issues raised by the parties, but only those which are determinative. *Hall v. American Nat'l Plastics, Inc.,* 73 Wn.2d 203, 205, 437 P.2d 693 (1968). Because we affirm the lower

court's decision in this case, Brink does not have a judgment against him. Consequently, a decision on Brink's cross appeals would be irrelevant, and we decline to address them.

Turning to claims dismissed against Austin, we find the trial court did not err by dismissing plaintiffs' securities act claim against him. The record indicates no evidence was presented at trial which showed Austin had contact with plaintiffs regarding the investment, nor was there evidence that Austin had any involvement in negotiations between Cornerstone and Pacific Home Equities during the search for an investor. Although the trial court did find plaintiffs' investment properly fell within the definition of a security under RCW 21.20.005(12), the court also determined there was insufficient evidence to conclude Austin's actions were a "substantial contributive factor in the sales transaction", *Haberman v. WPPSS*, 109 Wn.2d 107, 131, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988), an element necessary to submit the issue to the jury. We affirm the trial court's dismissal of The Securities Act of Washington claim.

Austin himself argues the trial court erred by submitting to the jury plaintiffs' conspiracy claim against him. However, Austin cites no legal authority to support his position. *See* RAP 10.3(a)(5); *Orwick v. Seattle*, 103 Wn.2d 249, 256, 692 P.2d 793 (1984). We therefore decline to reach this issue.

Nor do we find the trial court erred in submitting the Consumer Protection Act claim against Austin to the jury. A violation of the Consumer Protection Act consists of the following five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) having an impact on public interest; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Austin alleges that as a matter of law the trial court erred in submitting the Consumer Protection Act claim

against him to the jury. His argument is twofold: First, he argues there is insufficient evidence that he committed an unfair or deceptive act or practice; second, he argues no causal link exists between himself and plaintiffs which would support a cause of action. Austin's argument therefore entails an examination of the first and fifth elements under *Hangman Ridge.*

 ██ Looking first at whether Austin's procurement of the inflated appraisal from Lamb, Hanson, and Lamb constitutes an unfair or deceptive act or practice, plaintiffs need not show that the act in question was intended to deceive, but only that the act had the capacity to deceive a substantial portion of the public. *Hangman Ridge,* at 785; *McRae v. Bolstad,* 101 Wn.2d 161, 167, 676 P.2d 496 (1984). Here, the evidence showed Austin approached Lamb, Hanson, and Lamb and requested an appraisal which would reflect the value of the property as if all repairs had been completed. The evidence also revealed that at the time of the appraisal, the property was in complete disrepair. The evidence also showed the appraisal was used by defendant Weiss of Pacific Home Equity for the purpose of locating a member of the public who would be willing to invest in the property. It is the fact plaintiffs were members of the public who were chosen at random and who were induced by the inflated appraisal into investing in the property that convinces us Austin committed a deceptive act which had the capacity to deceive a substantial portion of the public. *See also Travis v. Washington Horse Breeders Ass'n, Inc.,* 111 Wn.2d 396, 406–07, 759 P.2d 418 (1988). We therefore find the first element satisfied.

 Having established Austin committed a deceptive act, we next examine the fifth element under *Hangman Ridge.* Austin asserts that a causal link must exist between plaintiffs and himself in order to satisfy this part of the test. This is incorrect. Instead, the causal link must exist between the *deceptive act* (the inflated appraisal) and the *injury suffered. Travis,* at 407; *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 741, 733 P.2d 208 (1987). There is

no doubt such a causal link exists in this case. Plaintiffs testified at various stages throughout the litigation that had they not been shown the inflated appraisal, they never would have made the investment which led to the injury *now complained of.*

We do not need to discuss the remaining elements under *Hangman Ridge* since Austin does not discuss them in his brief. We hold the trial court did not err in submitting the Consumer Protection Act claim against Austin to the jury.

## VII

We next examine whether it was proper for the trial court to instruct the jury that plaintiffs were entitled to emotional damages as part of their recovery under the Consumer Protection Act.

Austin argues the trial court should not have allowed the jury to consider emotional damages as recovery under the Consumer Protection Act. In support, Austin cites *Keyes v. Bollinger,* 31 Wn. App. 286, 640 P.2d 1077 (1982), which held mental distress, embarrassment, and inconvenience are not compensable under the Consumer Protection Act unless accompanied by some pecuniary loss to the person's "business or property". *Keyes,* at 296. Austin argues plaintiffs submitted no evidence which would indicate any pecuniary loss arose out of their alleged pain and suffering.

Although the trial court did instruct the jury that it could award emotional damages under the Consumer Protection Act, we decline to decide whether this was appropriate since the special verdict form which the jury completed indicates that emotional damages may have been awarded under the negligence claim against Brink. Since no objection to the special verdict form itself is raised in this appeal, we affirm the emotional damages award in this case.

■ We also note that relative to the issue of emotional damages, plaintiffs argue the trial court erred in excluding their expert witness from reading the opinion of a third doctor, which appeared in medical records, into evidence. We decline to reach this issue given that plaintiffs' counsel

failed to make an offer of proof or otherwise properly object to the court's ruling. In order to obtain appellate review of the trial court's exclusion of evidence, an offer of proof must be made which fairly advises the trial court whether the evidence is admissible. *Northern State Constr. Co. v. Robbins,* 76 Wn.2d 357, 366, 457 P.2d 187 (1969).

## VIII

The last issues to examine concern attorney fees. We first examine this issue at the trial level.

Plaintiffs argue the trial court should have awarded them attorney fees and costs under the doctrine of benefit of the bargain. Plaintiffs also argue the court erred by failing to award fees for paralegal and law clerk time.

 Whether attorney fees are reasonable is a question of fact to be answered in light of the particular circumstances of each individual case, and in fixing fees the trial court is given broad discretion. *In re Renton,* 79 Wn.2d 374, 377, 485 P.2d 613 (1971) (citing *State v. Roth,* 78 Wn.2d 711, 479 P.2d 55 (1971); *Tucker v. Mehlhorn,* 140 Wash. 283, 248 P. 376 (1926)). The trial court, in its memorandum opinion, carefully considered the factors involved in awarding plaintiffs the appropriate fees and costs. There is substantial evidence indicating the court reduced plaintiffs' requested fees and costs based on a calculated assessment of time spent on claims which were never submitted to the jury. Accordingly, we find the trial court did not abuse its discretion.

Defendant Austin also argues the trial court erred in assessing fees against him. He bases his argument on the trial court's alleged error in entering findings of fact relating to the amount of time plaintiffs' counsel spent pursuing claims against him.

 A finding of fact that is supported by substantial evidence is accepted as a verity on appeal. *Burba v. Vancouver,* 113 Wn.2d 800, 807, 783 P.2d 1056 (1989). In assessing appropriate fees under the Consumer Protection Act, the trial court must determine the number of hours

reasonably expended in the litigation. *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 597, 675 P.2d 193 (1983). The court must then discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. *Bowers,* at 597. The total number of hours reasonably expended is then multiplied by the attorney's hourly rate. *Bowers,* at 597. The trial court can also adjust the fee based on factors unique to the case before it (skill and reputation of the attorney, undesirability of the case, time limitations imposed on the attorney). *Bowers,* at 597.

We are persuaded the trial court's findings of fact are in keeping with the requirements established in *Bowers.* In particular, the trial court examined plaintiffs' time records pertaining to time spent pursuing claims against all the defendants and then calculated time spent exclusively on claims against Austin. It is worth noting plaintiffs' counsel requested fees substantially higher than those actually awarded by the court. The court then considered the fact plaintiffs were successful on most of the claims against Austin and consequently assessed attorney fees totaling $95,500 against him. We find the trial court properly calculated fees and costs against Austin.

 Finally, plaintiffs request $35,311.50 in attorney fees on appeal. They base their request on RCW 19.86-.090 (the Consumer Protection Act), which entitles one who successfully litigates a claim under it to attorney fees and costs in connection with bringing the claim. Attorney fees in connection with Consumer Protection Act claims are also recoverable on appeal. *Keyes v. Bollinger,* 31 Wn. App. 286, 298, 640 P.2d 1077 (1982).

We decline to grant plaintiffs' request for attorney fees for several reasons. First, RAP 18.1(c) requires the party requesting attorney fees to file an affidavit and request 7 days in advance of oral argument detailing the expenses incurred and the services performed by counsel. Here, plaintiffs failed to comply with this rule in that they filed their request 2 days before oral argument. Second, the total plaintiffs requested includes attorney time for the entire

appeal, which consisted of approximately 13 issues not related to Consumer Protection Act claims. The entire amount requested, therefore, cannot be lumped together and awarded under the Consumer Protection Act. *See Nordstrom,* at 743–44. Third, the attorney fee declaration plaintiffs filed with this court does not segregate those hours spent pursuing Consumer Protection Act claims from hours spent pursuing the several other issues raised. The request for attorney fees is denied.

We affirm the trial court in all respects.

CALLOW, C.J., UTTER, BRACHTENBACH, DORE, ANDERSEN, DURHAM, and SMITH, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied October 22, 1990.